[Cite as *In re P.S.*, 2020-Ohio-4929.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

IN THE MATTER OF: P.S.
                                      :
                                      :
                                      :     Appellate Case No. 28812
                                      :
                                      :     Trial Court Case No. 2018-1641
                                      :
                                      :     (Appeal from Common Pleas Court-
                                      :     Juvenile Division)
                                      :
                                      :

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of October, 2020.

. . . . . . . . . . .

TRAVIS KANE, Atty. Reg. No. 0088191, 130 West Second Street, Suite 460, Dayton,
Ohio 45402
      Attorney for Appellant, Mother

CYNTHIA L. WESTWOOD, Atty. Reg. No. 0079435, 1 South Main Street, Suite 1300,
Dayton, Ohio 45402
      Attorney for Appellees, Legal Custodians

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Appellant, Mother, appeals from the judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which granted legal custody of her child to the child's foster parents. Having reviewed the arguments, the record and the pertinent law, we affirm the judgment of the juvenile court.

## I.     Facts and Procedural Background

{¶ 2} P.S. was born in February 2018. Montgomery County Children Services ("MCCS") became involved with the family at the time of the birth due to concerns about Mother's ability to adequately care for the child. Following discharge from the hospital, P.S. went to Mother's home. Services were provided to help Mother with parenting issues, including how to feed P.S., but on April 3, 2018, P.S. was admitted to Dayton Children's Hospital with a diagnosis of moderate to severe malnutrition and failure to thrive. During the hospitalization, staff attempted to educate Mother on feeding and holding the child. However, Mother had difficulty understanding and remembering the instructions. Additionally, Mother would not wake to feed the child at night, and at one point the staff found P.S. face down on a couch in the room while Mother slept. Further, despite repeated warnings, Mother left the side rails of the hospital crib lowered.

{¶ 3} P.S. was removed from Mother's custody after MCCS filed a complaint alleging neglect and dependency. Following a hearing, P.S. was adjudicated neglected and dependent, and MCCS was granted temporary custody. P.S. was placed in the care of a foster family.

{¶ 4} After a motion for legal custody was filed on behalf of the foster parents and a motion for a first extension of temporary custody was filed by MCCS, the magistrate

held a legal custody hearing in June 2019. Following the hearing, the magistrate issued a decision awarding legal custody to the foster parents. Mother filed objections. The juvenile court overruled Mother's objections and granted legal custody of P.S. to the foster parents. Mother filed a timely appeal.[1]

## II.    Child's Best Interests

{¶ 5} Mother's sole assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING LEGAL CUSTODY TO THE LEGAL CUSTODIANS AND DENYING A FRIST [SIC] EXTENSION OF TEMPORARY CUSTODY AS THE DECISION WAS NOT IN THE CHILD'S BEST INTEREST

{¶ 6} Mother argues that the evidence at the hearing demonstrated that the child's best interest was not served by granting legal custody to the foster parents.

{¶ 7} The dispositional options available to the juvenile court regarding an abused, neglected, or dependent child include granting a children services agency temporary custody, committing the child to the permanent custody of a children services agency, or awarding legal custody to a relative or any other person. R.C. 2151.353(A). Of relevance hereto, an award of legal custody "vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual

---

[1] The child's biological father, who has remained incarcerated during the pendency of this case, is not a party to this appeal.

parental rights, privileges, and responsibilities." R.C. 2151.011(B)(21). An award of legal custody is not the equivalent of, nor as drastic as, a permanent custody award, because legal custody "does not divest a parent of residual parental rights, privileges, and responsibilities." *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 17. Mother's parental rights have not been terminated, and she retains visitation rights as well as the opportunity to request the return of her child. *In re Starks*, 2d Dist. Darke No. 1646, 2005-Ohio-1912, ¶ 14.

{¶ 8} Because of this, the standard for determining whether to award legal custody of a child is not as high as the clear and convincing standard utilized when deciding the issue of permanent custody. *Id.* at ¶ 15. Instead, the juvenile court must determine, by a preponderance of the evidence, whether an award of legal custody is in the best interest of the child. *Id.* "Preponderance of the evidence simply means 'evidence which is of a greater weight or more convincing than the evidence which is offered in opposition to it.' " *Id.*, quoting *Black's Law Dictionary* (6th Ed.1998) 1182.

{¶ 9} We review the juvenile court's judgment for an abuse of discretion. *In re A.M.*, 2d Dist. Greene No. 2009-CA-41, 2009-Ohio-6002, ¶ 9. Abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St. 3d 217, 219, 450 N.E.2d 1140 (1983). The discretion of a juvenile court in custody matters "should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *Starks* at ¶ 17, quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

{¶ 10} We have said that when a juvenile court makes a custody decision under

R.C. 2151.353, it "must do so in accordance with the 'best interest of the child' standard set forth in R.C. 3109.04(F)(1)." (Citations omitted.)   *In re D.S.*, 2d Dist. Clark No. 2013-CA-51, 2014-Ohio-2444, ¶ 9.   These factors include the parents' wishes; the child's wishes, if the court has interviewed the child; the child's interaction with parents, siblings, and others who may significantly affect the child's best interest; adjustment of the child to home, school, and community; and the mental and physical health of all involved persons. *Id.*, citing R.C. 3109.04(F)(1)(c).

{¶ 11} There is no doubt, on this record, that P.S. and Mother are bonded and that Mother wishes to be reunited with her child.   To that end, Mother was actively working to complete the case plan for reunification established by MCCS.[2]   However, there was competent and credible evidence that Mother's mental health and low-cognitive functioning precluded a reunification at the time of the hearing.

{¶ 12} The psychiatrist who evaluated Mother testified that Mother suffers from schizoaffective disorder (bipolar type), personality disorder with narcissistic, antisocial and borderline features, and that mother was intellectually disabled.   Indeed, her IQ testing indicated that she was in the extremely low range for intelligence.   The psychiatrist also testified Mother was impulsive and had extremely poor judgment and comprehension.   For example, she had known P.S.'s father for two days before asking him to move in with her.   She also stopped taking her medication during her pregnancy which led her to attempt suicide while pregnant with P.S.   Mother had made other attempts at suicide in the past.

---

[2] The case plan, among other things, required Mother to attend mental health counseling, mental health treatment including remaining on her prescribed medications, and attending parenting classes.

{¶ 13} The psychiatrist also testified that Mother engaged in relationships with men who abused her, including the father of P.S. During the pendency of this action, she filed a police report alleging her then-boyfriend had choked her.

{¶ 14} Mother also had a history of violent behavior, including setting a barn on fire, hitting her mother, and engaging in domestic violence against P.S.'s father. She admitted to having violent thoughts and sometimes acting upon them. The psychiatrist opined that P.S. would be at a serious risk of neglect, victimization, and physical abuse if returned to Mother's care.

{¶ 15} There was evidence that, despite frequent intervention, Mother had difficulty retaining the information relayed to her regarding P.S.'s care. For example, there was evidence that she failed to adequately restrain P.S. in her car seat despite being instructed how to do so and that she continued to feed the child baby food well after P.S. had graduated to solid food. The psychiatrist also testified Mother had trouble with recall.

{¶ 16} Further, Mother resided with her own mother ("Maternal Grandmother"). The record shows that between February 2018 and April 2019, the police were called to Maternal Grandmother's residence almost 40 times based upon allegations of domestic violence by Maternal Grandmother's boyfriend. Mother and her brother had been removed from Maternal Grandmother's care as children due to allegations of physical abuse and neglect.

{¶ 17} The record further demonstrates that, at the time of the 2019 hearing, P.S. was 16 months old and had lived with the foster parents since she was two months old. She was bonded with her foster parents and foster siblings and was doing well in their care. P.S. was physically healthy and was meeting all of her developmental milestones.

Further, the foster parents were willing to care for P.S. as long as needed. Importantly, Mother continued to have visitation with P.S.

**{¶ 18}** Although the trial court reasonably could have elected to grant MCCS an extension of temporary custody, the record does not support a finding that it abused its discretion by awarding legal custody to the foster parents. Accordingly, the assignment of error is overruled.

### III. Conclusion

**{¶ 19}** The assignment of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Travis Kane
Cynthia L. Westwood
Jamie J. Rizzo
Hon. Anthony Capizzi