[Cite as *In re C.W.*, 2020-Ohio-6849.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| | : | |
| IN RE: C.W. | : | Appellate Case No. 28781 |
| | : | |
| | : | Trial Court Case No. 2017-3406 |
| | : | |
| | : | (Appeal from Common Pleas |
| | : | Court – Juvenile Division) |
| | : | |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of December, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
     Attorney for Appellee, Montgomery County Children Services

KELLY M. SCHROEDER, Atty. Reg. No. 0080637, One South Main Street, Suite 1800, Dayton, Ohio 45402
     Attorney for Appellant, Mother

. . . . . . . . . . . . .

HALL, J.

**{¶ 1}** Mother appeals from the trial court's judgment entry overruling her objections to a magistrate's decision and awarding legal custody of her child, C.W., to a maternal cousin.

**{¶ 2}** In her sole assignment of error, Mother challenges the trial court's decision to award legal custody to the maternal cousin.[1] She argues that the trial court abused its discretion and that the disposition was not in C.W.'s best interest.[2]

**{¶ 3}** The record reflects that appellee Montgomery County Children Services ("MCCS") filed a May 2017 neglect and dependency complaint concerning C.W., who was then six years old. The complaint was filed after one of C.W.'s siblings went missing from the home Mother shared with Father. The complaint alleged that police had been called "multiple times over the years" due to children wandering out of the home and lacking supervision. The complaint further included allegations that Mother had moved out of the home after the foregoing incident and had refused to help care for C.W. or the child's siblings. Among other things, the complaint included allegations that Father had reported being unable to care for the children, that Mother had obtained other housing but had been uncooperative with MCCS, and that the children never had attended school

---

[1] Despite the award of legal custody, we note that Mother retains certain residual rights, including visitation rights and the opportunity to request the return of her child. *See In the Matter of P.S.*, 2d Dist. Montgomery No. 28812, 2020-Ohio-4929, ¶ 7.

[2] Mother's appellate brief also mentions the trial court's decision to grant appellee Montgomery County Children Services extensions of temporary custody with regard to two other children. The adjudication and disposition of those children occurred under different trial court case numbers. Those cases are not part of the present appeal, which was taken only from the trial court's legal-custody determination regarding C.W. Therefore, we need not address the trial court's extension of temporary custody with regard to C.W.'s siblings.

or done school work at home and lacked adequate medical care.

{¶ 4} C.W. and two siblings were adjudicated dependent in July 2017. MCCS obtained temporary custody of the children in August 2017. The trial court transferred temporary custody of C.W. to the maternal cousin in February 2018. Thereafter, MCCS moved for legal custody to the maternal cousin. Following a two-day hearing on August 9, 2018 and October 24, 2018, a magistrate filed a November 5, 2018 decision sustaining the motion and awarding the maternal cousin legal custody of C.W.[3] Mother filed objections and then supplemental objections to the magistrate's decision after obtaining a hearing transcript. In a March 16, 2020 order, the trial court overruled Mother's objections. In its lengthy ruling, the trial court summarized the testimony presented to the magistrate and aligned it with the pertinent statutory best-interest factors. The trial court then found, by a preponderance of the evidence, that awarding legal custody of C.W. to the maternal cousin was in the child's best interest. This appeal followed.

{¶ 5} In her assignment of error, Mother challenges the trial court's best-interest determination. She engages in her own analysis and weighing of the best-interest factors found in R.C. 3109.04(F)(1), arguing that those factors supported returning custody to her. Mother also asserts that she has satisfied or substantially completed her case-plan objectives and that she is capable of caring for C.W. (Appellant's brief at 9-11.)

{¶ 6} The law governing the trial court's legal-custody determination and our review of that decision is as follows:

R.C. 2151.353(A)(3) provides that if a child is adjudicated a

---

[3] Although Father was present for part of the hearing, the record reflects that he had little interaction with MCCS regarding any of the children or his case-plan objectives. Father is not a party to this appeal challenging the trial court's legal-custody determination.

dependent child, the court may award legal custody of the child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]" An award of legal custody "vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." R.C. 2151.011(B)(19).

When a juvenile court makes a custody determination under R.C. 2151.353, it must do so in accordance with the "best interest of the child" standard set forth in R.C. 3109.04(F)(1). *See In re Poling*, 64 Ohio St.3d 211, 594 N.E.2d 589, 1992-Ohio-144, paragraph two of the syllabus, and R.C. 2151.23(F)(1) (requiring a juvenile court to exercise its jurisdiction in accordance with R.C. 3109.04 as well as other sections of the Ohio Revised Code). The factors a court must consider in determining a child's best interest include such things as the parents' wishes; the child's wishes, if the court has interviewed the child; the child's interaction with parents, siblings, and others who may significantly affect the child's best interes[t]; adjustment of the child to home, school, and community; and the mental and physical health of all involved persons. R.C. 3109.04(F)(1)(c). * * *

"[W]hen determining whether or not to grant an individual or couple legal custody of a dependent child, a court can do so if it finds by a

preponderance of the evidence that it is in the best interes[t] of the concerned child. Preponderance of the evidence simply means 'evidence which is of a greater weight or more convincing than the evidence which is offered in opposition to it.' " (Internal citations omitted.) *In re A.W.*, 2d Dist. Montgomery No. 21309, 2006-Ohio-2103, ¶ 6, citing [*In re K.S.*], 2d Dist. Darke No. 1646, 2005-Ohio-1912.

We review the trial court's judgment for an abuse of discretion. *See In re C.F.*, 113 Ohio St.3d 73, 83, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 48 (applying abuse of discretion standard to trial court's findings under R.C. 2151.414); *In re A.M.*, 2d Dist. Greene No. 2009 CA 41, 2009-Ohio-6002, ¶ 9. Abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

*In re D.S.*, 2d Dist. Clark No. 2013-CA-51, 2014-Ohio-2444, ¶ 8-11.

{¶ 7} With the foregoing standards in mind, we see no abuse of discretion in the trial court's legal-custody determination. With regard to the statutory best-interest factors, Mother notes that she desires custody of C.W. Mother cites evidence that she has been working on rebuilding a bond with all of her children, that she established good attendance at visitation for several months, that she completed parenting classes, and that her children are bonded to one another. Mother acknowledges that C.W. is doing well in the maternal cousin's home. On the other hand, she claims the maternal cousin partially caused a broken bond between Mother and C.W., did not participate in sibling visits, and interfered with Mother's ability to be reunited with C.W. Mother also notes that she

underwent a mental-health assessment, which found no need for therapy. Mother acknowledges that C.W. needs mental-health therapy, but she attributes this to "the Agency's involvement and other issues." Mother then again notes that she recently established consistent visitation, blames maternal cousin for causing or contributing to a broken bond between Mother and C.W., and contends maternal cousin interfered with reunification efforts. Finally, Mother claims she has substantially completed her case plan and is able to care for her children.

{¶ 8} In her June 24, 2019 supplemental objections to the magistrate's decision, Mother did not specifically address the evidence as it relates to any of the statutory best-interest factors. Her entire substantive argument was as follows:

> From the testimony and evidence presented at trial, it is apparent that Mother has essentially completed her case plan. The failure to complete the remaining items [was] due to failures on the part of the Agency to take action, according to their testimony. It is inequitable for the Court to hold those failures against Mother. Instead of granting Legal Custody of [C.W.] to [maternal cousin] * * * the Court should have returned custody of the children to Mother with protective supervision if the Court had any concerns. The magistrate's decision was not in the best interest of the children.

(June 24, 2019 Supplemental Objections at 4-5.)

{¶ 9} In its decision overruling Mother's objections, the trial court addressed the status of Mother's case-plan progress as well as the statutory best-interest factors and the evidence applicable to them. With regard to the case plan, Mother's objectives were

"to obtain, maintain, and verify stable housing sufficient for the family's needs; participate, complete and provide documentation of a mental health assessment and follow recommendations; complete a parenting/psychological assessment and follow recommendations; sign all releases of information; complete parenting classes; obtain, maintain, and verify stable income sufficient to meet the family's needs; visit with the children regularly; and participate in regular, on-going home visits monthly." (March 16, 2020 Decision at 8.)

{¶ 10} The trial court thoroughly reviewed the evidence as it pertained to each case-plan objective. (*Id.* at 8-12.) Although parts of that evidence were favorable to Mother, the evidence remained mixed. Shortly before the first day of the hearing, Mother obtained a two-bedroom apartment that was clean and adequately supplied except for the fact that it needed a third bed to accommodate all three of Mother's children. Due to Mother's prior problems with housing, MCCS wanted to see longer-term stability on that issue.

{¶ 11} With regard to a mental-health assessment, Mother refused to comply for a lengthy period of time. She eventually underwent an assessment, and MCCS learned of that fact less than a week before the hearing. MCCS had not been able to speak to the therapist due to delays in Mother signing a release. Based on Mother's self-reporting during the assessment and the therapist's observations, the therapist did not believe she required ongoing treatment or medication.

{¶ 12} As for a parenting/psychological assessment, Mother refused for many months to sign a release to begin the referral process. Mother ultimately signed the required release about a week before the hearing started. The assessment was

scheduled but then needed to be reset because an issue came up with the clinician. When the hearing concluded, the parenting/psychological assessment had not been completed. With regard to required parenting classes, however, Mother did complete them.

{¶ 13} The evidence regarding Mother's income objective was mixed but largely favorable to her. A case worker who worked Mother's case for about one month testified that Mother was employed and that her income was sufficient. A second case worker who had been involved longer testified that Mother resisted providing information regarding income or expenses. That case worker was able to determine, however, that Mother's after-tax income was approximately $1,400 per month. The case worker did not know Mother's expenses and, therefore, could not determine the sufficiency of Mother's income.

{¶ 14} As for visitation, Mother's record for several months leading up to the first day of the hearing in August 2018 was excellent. Throughout the entire case, Mother had attended about half of her visits. Between the August 2018 and October 2018 hearing dates, Mother did not visit regularly. In September 2018, a no-call, no-show was recorded and, as a result, Mother was required to start arriving early for visits. Mother responded by cancelling all visits, and she did not see C.W. or the other children after August 2018.

{¶ 15} Finally, the trial court characterized a case worker's required visits to Mother's home as an ongoing objective because the visits only recently had started up after 16 months of no visits. During the time of no visits, Mother experienced periods of homelessness and refused to allow visits when she had housing.

{¶ 16} The trial court also addressed the statutory best-interest factors under R.C. 3109.04(F)(1), which, as relevant here, include: the wishes of the child's parents

regarding the child's care; the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; the child's adjustment to home, school, and community; and the mental and physical health of all persons involved in the situation.

{¶ 17} The trial court thoroughly examined the evidence relating to the foregoing factors. (March 16, 2020 Decision at 3-7.) The trial court recognized Mother's desire to regain custody. The trial court also recognized evidence of a bond among the children and at least a friendship with some bonding between Mother and C.W. Although Mother did not act inappropriately during visits, there was evidence that she at times did not display much affection or interaction. A guardian ad litem opined that Mother's bond with her children had become more broken over time. A case worker testified that C.W. loved being with the maternal cousin and wanted to remain in that placement. The case worker also stated that the maternal cousin did help facilitate interaction between C.W. and Mother's other children and that such interaction was expected to continue if maternal cousin obtained legal custody. C.W. is doing well with the maternal cousin, who was addressing the child's basic and special needs. With regard to those special needs, the trial court cited testimony about C.W. having significant mental-health needs and diagnoses that required intervention. The child also had needs related to a learning disability and a language-processing disorder. A guardian ad litem expressed concern about Mother not recognizing C.W.'s special needs and not being compliant with counseling and medication requirements, which Mother was not convinced were necessary.

{¶ 18} In addition to the foregoing factors, the trial court also evaluated the

evidence in the context of the best-interest factors under R.C. 2151.414(D), which apply to permanent-custody cases.[4] Although some factors under R.C. 2151.414(D) are the same as those discussed above, additional factors addressed by the trial court included C.W.'s custodial history and the child's need for a legally-secure placement. With regard to custodial history, the trial court simply recited the case history set forth above. As for a legally-secure placement, the trial court noted that the case had been opened around the summer of 2017 and that Mother initially did not interact much with MCCS. The trial court then addressed the case-plan objectives discussed above.

{¶ 19} Based on its review of the record, the trial court found, by a preponderance of the evidence, that the statutory best-interest factors supported awarding legal custody of C.W. to the maternal cousin. We see no abuse of discretion in this determination. The trial court engaged in a thorough analysis and reached a conclusion that was entirely reasonable. Although the trial court appropriately weighed and considered multiple factors, we find particularly noteworthy C.W.'s special needs and testimony about Mother's inability or unwillingness to accept the existence of those needs, leading to reasonable concerns about whether she would meet them. We find no support for Mother's suggestion that C.W. required mental-health therapy because of MCCS's involvement in the case. We note too that a guardian ad litem recommended legal custody to maternal cousin. Finally, we note that Mother's progress on her case-plan objectives

---

[4] This court has recognized that considering the permanent-custody best-interest factors in a legal-custody case is not erroneous because R.C. 3109.04(F)(1) allows a trial court to consider "all relevant factors," which might include the additional best-interest factors found in R.C. 2151.414(D). *In re C.N.*, 2d Dist. Montgomery No. 27119, 2016-Ohio-7322, ¶ 51.

did not preclude awarding legal custody to the maternal cousin. Case-plan compliance is not the only consideration in a legal-custody determination:

> * * * A parent's case-plan compliance is relevant, of course, to the best-interest determination, but it is not dispositive. *In re T.S.*, 2017-Ohio-482, 85 N.E.3d 225, ¶ 13 (2d Dist.). Satisfying case-plan objectives is a means to an end, not an end unto itself. *Id.* at ¶ 12. The statutory best-interest factors may justify an award of legal custody to someone other than a parent, or even the termination of parental rights, despite a parent's completion of all case-plan objectives. *Id.* This is so because the best-interest factors encompass much more than the parent's case-plan objectives, and they do so from the perspective of the child's particular needs. In short, the focus of a best-interest analysis is on the child, not the parent.

*In re A.K*, 2d Dist. Montgomery No. 27575, 2017-Ohio-8100, ¶ 11.

{¶ 20} Here the trial court appropriately evaluated the evidence, including Mother's case-plan progress, and applied the best-interest factors. Finding no abuse of discretion in the trial court's best-interest determination, we overrule Mother's assignment of error.

{¶ 21} The trial court's judgment awarding legal custody of C.W. to the maternal cousin is affirmed.

. . . . . . . . . . . . .


TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Kelly M. Schroeder
Phillip Reid
C.B.
D.B.
Hon. Anthony Capizzi