[Cite as *In re M.G.*, 2025-Ohio-4566.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

IN RE: M.G.                          :
                                     :
                                     :        Case Nos. 25CA1216
                                     :
                                     :
                                     :
                                     :        DECISION AND JUDGMENT
                                     :        ENTRY
                                     :

_____

**APPEARANCES**:

Brian T. Goldberg, Cincinnati, Ohio, for appellant.

Ariana Bowles-Norris, Adams County Assistant Prosecuting Attorney, West
Union, Ohio, for appellee.

_____

Smith, P.J.

{¶1}   Appellant, T.G., appeals the trial court's judgment that placed her 22-
month-old child in the permanent custody of Adams County Children Services
Board ("the agency").  In her sole assignment of error, appellant essentially argues
that the trial court's judgment placing the child in the agency's permanent custody
is against the manifest weight of the evidence.  Upon review, we do not find any
merit to appellant's assignment of error.  Accordingly, we overrule appellant's
assignment of error and affirm the trial court's judgment.

FACTS

{¶2}  On June 30, 2023, the agency filed a complaint that alleged that the child was an abused and dependent child.  The complaint averred that the approximately four-week-old child had multiple, unexplained injuries, including bruises and broken ribs.  The complaint further asserted that the agency had active dependency and abuse cases involving two of the child's siblings.  The agency requested temporary custody of the child, which the trial court granted.

{¶3}  The trial court later adjudicated the child an abused and dependent child and continued her in the agency's temporary custody.

{¶4}  On June 12, 2024, the agency filed a motion that requested permanent custody of the child.  The agency argued that the child cannot be placed with appellant within a reasonable time and that placing the child in its permanent custody is in the child's best interest.

{¶5}  On September 18, 2024, the trial court held a hearing to consider the agency's permanent custody motion.  Caseworker Theresa Smith testified that, although appellant completed a mental health and substance abuse assessment, as well as a parenting course, she did not consistently comply with her treatment program.  Smith further stated that appellant has maintained stable housing, but she did not inform the agency when she had visitors, which she was required to do given the agency's concern regarding the physical abuse that the child and

appellant's other children had suffered.  Smith indicated that the child is doing well in the foster home and is bonded with the foster parents.

{¶6}  Appellant testified that she completed a parenting course and obtained a mental health assessment.  She believed that she would be able to comply with the case plan if given more time and asked the court to give her another six months to demonstrate her ability to consistently comply with the case plan.  The court asked appellant whether she could explain the source of the child's injuries, but appellant stated that her counsel had advised her to refrain from answering the question.

{¶7}  The child's guardian ad litem (GAL) testified that she has a consistent concern about appellant's lack of cooperation and ability to protect the child.  The GAL explained that she had not heard from appellant in close to one year.  The GAL reported that the child is thriving in the foster home and that the foster parents are interested in adopting the child.  She recommended that the court place the child in the agency's permanent custody.

{¶8}  On October 24, 2024, the magistrate entered a decision that placed the child in the agency's permanent custody.  Appellant subsequently filed objections.

{¶9}  On April 7, 2025, the trial court overruled appellant's objections and granted the agency permanent custody of the child.  The trial court concluded that the child cannot be placed with either parent within a reasonable time or should not

be placed with either parent and that placing the child in the agency's permanent custody is in her best interest. The court found that appellant completed some of her case plan requirements "but failed to demonstrate sustained progress." The court stated that appellant did not consistently attend mental health counseling or adhere to her prescribed medication, did not maintain stable employment, and "allowed unrelated adult males to stay overnight in her home without notifying the agency."

{¶10} The court further noted that appellant has not visited the child since July 25, 2023, because her contact with the child "was suspended following the documented injuries." The court explained that appellant "has a documented history of neglect and substantiated physical abuse with her children" and "was unable to provide an explanation for [the child]'s injuries at the onset of the case." The court reasoned that, even if appellant had improved her stability, the "concerns about her ability to protect [the child] remain unresolved."

{¶11} The court observed that the child has been in the same foster home since July 7, 2023, and that she is a "happy, healthy, and thriving toddler who has bonded deeply with the foster family." The court also pointed out that the foster parents would like to adopt the child if the agency is granted permanent custody and that the child's GAL "strongly supports the motion for permanent custody."

The court emphasized that the GAL "stressed that permanent custody is the only path to achieving the child's long-term stability."

{¶12} The court considered the child's interactions and interrelationship and concluded that "[t]he strong and positive bond [the child] has developed with her foster family outweighs her limited and concerning relationship with her biological mother and father." The court noted that the child's father did not have any involvement in the case and again observed that the child suffered physical abuse while in appellant's custody.

{¶13} The court found that the child "has a critical need for a legally secure permanent placement to ensure her safety, stability, and well-being." The court stated that appellant (1) "has not demonstrated the ability to ensure [the child]'s safety or meet her basic needs," (2) was unable to account for the child's injuries, (3) did not consistently comply with the case plan, and (4) failed "to address significant safety concerns." The court thus concluded that the child could not achieve a legally secure permanent placement without granting the agency permanent custody.

{¶14} The court also found that R.C. 2151.414(E)(7), (9), and (10) applied. The court stated that (1) although appellant did not have a criminal conviction involving injury to the child, the child's injuries had been ruled as physical abuse,

(2) appellant placed the child at substantial risk of harm due to physical abuse, and

(3) the father abandoned the child.

{¶15} Based upon all of the foregoing, the court concluded that the child

cannot be placed with either parent within a reasonable time or should not be

placed with either parent and that placing the child in the agency's permanent

custody is in her best interest. Accordingly, the court granted the agency

permanent custody of the child. This appeal followed.

ASSIGNMENT OF ERROR

> THE TRIAL COURT ERRED IN TERMINATING
> [APPELLANT]'S LEGAL CUSTODY OF M.G. AND
> PLACING THE CHILD IN THE PERMANENT CUSTODY
> OF THE AGENCY.

{¶16} In her sole assignment of error, appellant essentially asserts that the

trial court's permanent custody judgment is against the manifest weight of the

evidence. She recognizes that "the trial court made findings to support the

conclusion that placement of the child in the permanent custody of the [a]gency

was in the child's best interest." Appellant contends, however, that placing the

child in the agency's permanent custody was not in the child's best interest.

Appellant argues that the trial court failed to consider "the positive steps [she] has

taken." She further complains that the agency "never offered her an opportunity to

reunite with" the child. Appellant complains that the agency decided from the start

that appellant would never have the opportunity to parent the child and did not make any effort to offer her supervised parenting time.

## Standard of Review

{¶17} A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *E.g., In re R.M.*, 2013-Ohio-3588, ¶ 53 (4th Dist.); *see In re Z.C.*, 2023-Ohio-4703, ¶ 1. When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court " ' " 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " ' " *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist. 2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶18} In a permanent custody case, the ultimate question for a reviewing court is "whether the juvenile court's findings . . . were supported by clear and convincing evidence." *In re K.H.*, 2008-Ohio-4825, ¶ 43. In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient

evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990). "Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." *R.M.*, 2013-Ohio-3588, at ¶ 55 (4th Dist.).

{¶19} Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the factfinder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175. A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " *Id.*, quoting *Martin* at 175; *see Black's Law Dictionary* (12th ed. 2024) (the phrase "manifest weight of the evidence" "denotes a deferential standard of review under which a verdict will be reversed or disregarded only if another outcome is obviously correct and the verdict is clearly unsupported by the evidence").

{¶20} Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties'

demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997); *accord In re Christian,* 2004-Ohio-3146, ¶ 7 (4th Dist.).  As the Ohio Supreme Court long ago explained:

> In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record.

*Trickey v. Trickey*, 158 Ohio St. 9, 13 (1952).

## Permanent Custody Framework

{¶21}  R.C. 2151.414(B)(1) specifies that a trial court may grant a children services agency permanent custody of a child if the court finds, by clear and convincing evidence, that (1) the child's best interest would be served by the award of permanent custody, and (2) as relevant here,

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, . . .  and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

R.C. 2151.414(B)(1)(a)

{¶22}  In the case at bar, the trial court found, pursuant to 2151.414(B)(1)(a), that the child cannot be placed with either parent within a

reasonable time or should not be placed with either parent.[1]  Appellant does not

dispute this finding.  Because appellant does not dispute the trial court's R.C.

2151.414(B)(1)(a) finding, we do not address this factor.

Best Interest

{¶23}  If a trial court finds the existence of one of the R.C. 2151.414(B)(1)

conditions, before the court may grant the agency permanent custody of a child, the

court also must conclude that placing the child in the agency's permanent custody

is in the child's best interest.  *See* R.C. 2151.414(B)(1).

{¶24}  R.C. 2151.414(D)(1) requires a trial court to consider all relevant, as

well as specific, factors to determine whether a child's best interest will be served

by granting a children services agency permanent custody.  The specific factors

include:  (1) the child's interaction and interrelationship with the child's parents,

siblings, relatives, foster parents and out-of-home providers, and any other person

who may significantly affect the child; (2) the child's wishes, as expressed directly

by the child or through the child's guardian ad litem, with due regard for the

child's maturity; (3) the child's custodial history; (4) the child's need for a legally

secure permanent placement and whether that type of placement can be achieved

---

[1] Although the magistrate found, pursuant to R.C. 2151.414(B)(1)(d), that the child had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period, the trial court did not.

without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶25} Determining whether granting permanent custody to a children services agency will promote a child's best interest involves a balancing of "all relevant [best interest] factors," as well as the "five enumerated statutory factors." *In re C.F.*, 2007-Ohio-1104, ¶ 57, citing *In re Schaefer*, 2006-Ohio-5513, ¶ 56; *accord In re C.G.*, 2008-Ohio-3773, ¶ 28 (9th Dist.); *In re N.W.*, 2008-Ohio-297, ¶ 19 (10th Dist.). However, none of the best interest factors requires a court to give it "greater weight or heightened significance." *C.F.* at ¶ 57. Instead, the trial court considers the totality of the circumstances when making its best interest determination. *In re K.M.S.*, 2017-Ohio-142, ¶ 24 (3d Dist.); *In re A.C.*, 2014-Ohio-4918, ¶ 46 (9th Dist.). In general, "[a] child's best interest is served by placing the child in a permanent situation that fosters growth, stability, and security." *In re C.B.C.*, 2016-Ohio-916, ¶ 66 (4th Dist.), citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324 (1991).

{¶26} In the case before us, appellant has not raised any specific arguments regarding the trial court's best interest determination. In fact, she explicitly agrees that "the trial court made findings to support the conclusion that placement of the child in the permanent custody of the [a]gency was in the child's best interest." She thus does not challenge any of the trial court's best interest findings. As we

have recognized in previous cases, when a parent does not present any analysis of the best interest factors, we ordinarily will not create that analysis for the parent. *See In re J.C.*, 2023-Ohio-3299, ¶ 33 (4th Dist.); *In re B.P.*, 2021-Ohio-3148, ¶ 56 (4th Dist.); *In re B.M.*, 2020-Ohio-1376, ¶ 37 (4th Dist.).  Indeed, an appellant, not an appellate court, has the duty " 'to construct the legal arguments necessary to support the appellant's assignments of error.' " *Cook v. Ohio Dept. of Job & Family Servs.*, 2015-Ohio-4966, ¶ 40 (10th Dist.), quoting *Bond v. Canal Winchester*, 2008-Ohio-945, ¶ 16 (10th Dist.); *accord State v. Quarterman*, 2014-Ohio-4034, ¶ 19 (stating that appellate court is "not obligated to search the record or formulate legal arguments on behalf of the parties").  For this reason, we briefly note that the record contains ample clear and convincing evidence to support the trial court's best interest determination.  The child has lived with the foster family since early July 2023, when she was about one month old.  Moreover, the GAL indicated that the child is thriving in the foster home and has established bonds with the foster family.  The GAL further recommended that the court place the child in the agency's permanent custody.  *In re C.F.*, 2007-Ohio-1104, at ¶ 56 (observing that "[t]he trial court has discretion to accept the testimony of the guardian ad litem on the child's wishes").

{¶27}  Rather than focusing on the child's best interests, appellant's argument instead focuses upon her alleged case plan compliance.  However, a

parent's efforts to improve the parent's situation, or to comply with a case plan, may be relevant, but not necessarily conclusive, factors when a court evaluates a child's best interest. *See In re Ca.S.*, 2021-Ohio-3874, ¶ 39-40 (4th Dist.); *In re B.P.*, 2021-Ohio-3148, ¶ 57 (4th Dist.); *In re T.J.*, 2016-Ohio-163, ¶ 36 (4th Dist.), citing *In re R.L.*, 2014-Ohio-3117, ¶ 34 (9th Dist.) ("although case plan compliance may be relevant to a trial court's best interest determination, it is not dispositive of it"); *In re K.M.*, 2019-Ohio-4252, ¶ 70 (4th Dist.), citing *In re W.C.J.*, 2014-Ohio-5841, ¶ 46 (4th Dist.) ("[s]ubstantial compliance with a case plan is not necessarily dispositive on the issue of reunification"); *accord In re S.C.*, 2015-Ohio-2280, ¶ 40 (8th Dist.) ("[c]ompliance with a case plan is not, in and of itself, dispositive of the issue of reunification"); *In re C.W.*, 2020-Ohio-6849, ¶ 19 (2d Dist.) ("[c]ase-plan compliance is not the only consideration in a legal-custody determination"). "Indeed, because the trial court's primary focus in a permanent custody proceeding is the child's best interest, 'it is entirely possible that a parent could complete all of his/her case plan goals and the trial court still appropriately terminate his/her parental rights.' " *W.C.J.*, 2014-Ohio-5841, at ¶ 46 (4th Dis.), quoting *In re Gomer,* 2004-Ohio-1723, ¶ 36 (3d Dist.); *accord In re J.B.*, 2013-Ohio-1704, at ¶ 90 (8th Dist.) (substantial compliance with case plan services is not, in and of itself, "dispositive" and "does not preclude a grant of permanent custody to a social services agency"). Thus, a parent's case plan compliance will not preclude a trial

court from awarding permanent custody to an agency when doing so is in the child's best interest. *See In re S.M.*, 2023-Ohio-2686, ¶ 44 (4th Dist.). Accordingly, even if appellant complied with some parts of the case plan, her compliance does not override the child's best interest.

{¶28} Appellant also argues that the agency did not make reasonable efforts to offer her visits with the child. However, as the trial court found, the agency stopped appellant's visits with the child once physical abuse had been substantiated. The evidence indicates that appellant's failure to comply with her case plan prevented the agency from establishing a visitation schedule.

{¶29} Given all of the foregoing, the trial court could have quite reasonably decided not to experiment with the child's welfare by continuing her in custodial limbo to give appellant more time to demonstrate that she would consistently comply with her case plan or otherwise be able to assure the agency of the child's safety if placed in her care. We repeatedly have recognized that trial courts need not experiment with a child's welfare:

> " '[A] child should not have to endure the inevitable to its great detriment and harm in order to give the . . . [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the . . . [parent] . . . . The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm.' "

*W.C.J.*, 2014-Ohio-5841, at ¶ 48 (4th Dist.), quoting *In re Bishop*, 36 Ohio App.3d 123, 126 (5th Dist.1987), quoting *In re East*, 32 Ohio Misc. 65, 69 (C.P. 1972).

Conclusion

{¶30} Based upon all of the foregoing reasons, we cannot say that the evidence weighs heavily against the trial court's judgment granting the agency permanent custody of the child. Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**