[Cite as *In re A.V.*, 2019-Ohio-1685.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re A.V.

Court of Appeals No. L-18-1197

Trial Court No. JC 16254683

**DECISION AND JUDGMENT**

Decided:  May 3, 2019

* * * * *

Melody Wilhelm, for appellant.

Bradley W. King, for appellee.

* * * * *

**MAYLE, P.J.,**

{¶ 1} This is appeal from an August 15, 2018 judgment of the Lucas County Court of Common Pleas, Juvenile Division, which adopted the decision of the magistrate to transfer legal custody of the minor child ("A.V.") from the mother to the paternal great uncle.  On appeal, the mother argues that the trial court's conclusion – that it was in the

child's best interests to grant legal custody of A.V. to the uncle – was an abuse of discretion. The father, who participated in the proceedings below, did not appeal. Therefore, the issues discussed herein are limited to the evidence presented relative to the mother's parental rights. As set forth below, we affirm the decision of the lower court.

**Facts and Procedural History**

{¶ 2} This case began with the filing of a complaint in dependency and neglect by Lucas County Children Services ("LCCS") on April 5, 2016. At the time, A.V. lived with her mother, "C.A." (hereinafter "Mother"). According to the complaint, Mother was homeless and had left A.V., aged 20 months, in the care of "inappropriate relatives," who were abusing illegal drugs. Mother was alleged to be abusing marijuana and suffering from untreated bipolar depression and anxiety. The father, identified as "Al.V.," was incarcerated "on drug related charges." Following an emergency shelter care hearing, temporary custody of A.V. was granted to LCCS, and the child was placed with her paternal great uncle, G.F. ("Uncle"), and his wife, J.F. ("Aunt").

{¶ 3} An adjudicatory hearing was held on May 5, 2016 before a magistrate judge. Mother attended the hearing and was represented by counsel. Father did not attend, but was represented by counsel. At the hearing, Mother stipulated to a finding of dependency and neglect, which the court accepted.

{¶ 4} An "annual review permanency hearing" took place on March 27, 2017. At that hearing, LCCS Ongoing Caseworker Katie Duval requested an extension of the agency's temporary custody. According to Duval, A.V.'s placement with Uncle was going "very well;" Mother was "making significant progress" with regard to her mental

2.

health and substance abuse treatment; and the agency's goal was to reunite Mother and A.V. Susan Carlson, the court appointed special advocate ("CASA"), supported LCCS's request. At the conclusion of the hearing, the court found by clear and convincing evidence that it was in A.V.'s best interest to extend temporary custody to LCCS. A second and final extension was granted by the court on September 21, 2017.

{¶ 5} Two months later, LCCS's position on reunification had changed. On November 21, 2017, the agency filed a motion to grant legal custody to Uncle, and a hearing on the matter was held on March 29, 2018, before a magistrate judge.

{¶ 6} At the hearing, Duval testified to "several" poor decisions by Mother that caused LCCS to conclude that reunification with Mother was not in A.V.'s best interests. Duval cited Mother's two recent positive test results, one for alcohol and another for "a low dose of cocaine." Evidence in the record established that, given the amount of cocaine, it was unlikely that Mother had personally used cocaine but had come "in contact" with someone who was using. In a third incident, Mother was pulled over while driving her friend's car, without a license. Following a search, police seized heroin from within the vehicle. Although Mother was not charged with drug possession, Duval cited the incident as another example of Mother's poor choices in "the type of people" she was spending time with, especially because Mother's substance abuse history included a near fatal heroin overdose. Duval also cited Mother's failure to place A.V. in a car seat, and a crude video posted on Facebook on October 2, 2017, in which Mother was "deep throating a banana" and talking about drugs while "inappropriate music" played in the background. A.V., who was sick at the time, was also shown in the video.

3.

{¶ 7} Duval testified extensively about Mother's participation in services provided by Family Drug Court (consisting of trauma therapy and enrollment in the RISE program) and Unison Health. Mother missed 7 of 12 trauma therapy sessions and was "closed out of the course." Likewise, her attendance at individual and weekly group sessions in the RISE program was "very minimal up until February of [2018]." On the other hand, Mother successfully completed substance abuse treatment at Unison and was weaned off of Suboxone. Although she missed a "handful of appointments," her Unison attendance there was "pretty regular." As of the hearing date, Mother had also secured appropriate housing. In sum, Duval testified that LCCS was seeking a change in custody, from LCCS to Uncle, due to its "concern [over] the type of people that [Mother] continues to hang around with and how that can put [A.V.] at risk for being abused or neglected." Still, Duval supported some limited periods of unsupervised visitation between Mother and A.V.

{¶ 8} Duval also described her monthly visits to Uncle's home, which he shares with Aunt and their 19- year-old daughter. According to Duval, A.V. is "very bonded [to them] and adjusted," and her needs there were "being exceptionally met." Uncle and Aunt were willing to assume legal custody of A.V., and Duval opined that it would be detrimental to A.V. if she was removed from them.

{¶ 9} The CASA also testified. She met with Uncle, Aunt, Mother, and Father and also reviewed medical and treatment records. She concurred with the motion to transfer custody to Uncle and to allow Mother unsupervised visitation with A.V. The CASA added that Uncle and Aunt's home was clean, that A.V. was "extremely" well-cared for,

4.

and that A.V. was "attached" to Uncle, Aunt, and their daughter. The CASA opined that it is a "great environment for her," and that A.V. would "definitely miss them" if she was removed from their home. While the CASA agreed that Mother had made "tremendous progress" over the past year, she also concurred that Mother lacks good "decision-making skills," which included Mother's spending time with "people [who] were using [drugs]."

{¶ 10} Donita McGuire, a clinical specialist from Unison Health, treated Mother since 2016 and developed a strong relationship with her. McGuire testified that Mother had made "very good progress" in the preceding five months (since testing positive for cocaine in December of 2017), and she confirmed that Mother had no positive "drops" for drugs or alcohol since that time. McGuire testified that Mother "rarely" missed her individual appointments with McGuire, although Mother's attendance at "trauma group" meetings was "sporadic." She added that Mother was taking prescribed medications for depression and treating with a psychiatrist, and that the two frequently discussed the need for Mother to make "healthy choices." In McGuire's opinion, "from 2016 to now [Mother] has grown up. But she still has a ways to go."

{¶ 11} Finally, Mother testified. She expressed her desire to bring her "daughter back home." Mother admitted to a "couple of stupid decisions and a couple little mistakes" but claimed to be "learning from [them]." She confirmed a prior heroin addiction, but claimed that she had not used that drug in 16 months (i.e. since around November of 2016). Mother credited her treatment at Unison for helping her to maintain sobriety, and she expressed her intention to continue treating there.

{¶ 12} At the conclusion of the hearing, the magistrate issued a decision awarding legal custody of A.V. to Uncle. The trial court adopted the decision, which it stayed, pending a ruling on Mother's objections. Following another hearing, the trial court found Mother's objections not well-taken, and by decision dated August 15, 2018, it found, by a preponderance of the evidence, that granting legal custody to Uncle was in A.V.'s best interests. The court reasoned that, "no evidence nor testimony contradicts the fact that Mother has made progress in this case; however, it was insufficient to allow reunification at the time of the hearing." In recognition of Mother's progress, the trial court modified the Magistrate's Decision by allowing Mother's unsupervised visits with A.V. to include overnight visits. Mother appealed. Through appellate counsel, she assigns a single assignment of error:

> **Assignment of Error 1**: The Trial Court abused its discretion in awarding legal custody of the minor child to a paternal relative when such a finding was not in the best interest of the minor child and when such a finding was against the manifest weight of the evidence.

{¶ 13} Legal custody proceedings vest in the custodian the right to have physical care and control of the child, subject to any residual parental rights and responsibilities that remain intact with the birth parents. *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 14-15. A trial court determines an award of legal custody based upon proof by a preponderance of the evidence. *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001). Because custody determinations "are some of the most difficult and agonizing decisions a trial judge must make," a trial judge must have

6.

broad discretion in considering all of the evidence. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). Therefore, an award of legal custody will not be reversed on appeal absent an abuse of discretion. *Id.; see also In re E.H.* 6th Dist. Ottawa No. T-15-044, 2016-Ohio-8170. To constitute an abuse of discretion, the ruling must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 14} An award of legal custody is authorized by statute where a child has been adjudicated neglected, dependent, or abused. R.C. 2151.353(A)(3). "At any hearing in which a court is asked to modify or terminate an order of disposition issued under section 2151.353 * * * of the Revised Code, the court, in determining whether to return the child to the child's parents, shall consider whether it is in the best interest of the child." R.C. 2151.42(A). "[C]ourts have looked to the best interest factors of R.C. 2151.414(D) [Regarding Permanent Custody], R.C. 3109.04(F)(1) [Regarding Shared Parenting], a combination of the two, or general notions of what should be considered regarding the best interests of the [child]." *In re E.H.* at ¶ 16, quoting *In re A.K.,* 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 25. The best interest subdivision of each statute provides that the trial court "shall consider all relevant factors," which specifically include the following:

- The wishes of the child's parents regarding the child's care. R.C. 3109.04(F)(1)(a).

7.

- The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest. R.C. 3109.04(F)(1)(c).

- The child's adjustment to the child's home, school, and community. R.C. 3109.04(F)(1)(d).

- The mental and physical health of all persons involved in the situation. R.C. 3109.04(F)(1)(e).

- The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights. R.C. 3109.04(F)(1)(f).

- The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period. R.C. 2151.414(D)(1)(c);

{¶ 15} In this case, the trial court cited the following as relevant in its best interest determination: Mother's drug and alcohol "relapse" in late 2017; Mother's compliance in "the past three months" with substance abuse and mental health treatment; the fact that A.V. had been living with Uncle for two years (more than half of her life); and the opinion of the GAL, who supported the motion to transfer legal custody to Uncle.

{¶ 16} Mother makes several arguments in support of her claim that the trial court abused its discretion. For example, Mother asserts that, as of the hearing date, she had found appropriate housing and successfully completed treatment for substance abuse.

8.

According to her, LCCS's only other stated concern was "who Mother chose to associate with and her decision-making." As for these "lingering issues," Mother claims that "no proof or evidence" was offered to show that Mother had not resolved those concerns as well.

{¶ 17} We found ample evidence put forth by LCCS to support its case that Mother's poor judgment remained a concern for the agency. For example the CASA testified that "people [who] were using * * * were still in her life as of a few months ago, whether they are now or not, I have no idea. But that's such a short period of time. To now make a decision for [A.V.] to go back with [Mother], * * * I would not feel comfortable for [A.V.] to be there under that situation." Similarly, Mother's treatment provider at Unison testified that she and Mother discussed "making better decisions * * * and healthy relationships" and that while Mother has "grown up[,] she still has a ways to go." Finally, Uncle and Aunt remarked to the caseworker "on multiple occasions" that they would support A.V.'s reunification with her Mother, but that "right now the risk is just too high." We find that LCCS presented evidence to support its view that Mother's poor judgment continued to pose a risk to A.V. as of the date of the hearing.

{¶ 18} Mother also argues that it was "unreasonable" for the court to award Uncle legal custody given "Mother's tremendous progress on her case plan." We find the timeline of this case instructive. Seven months *after* the complaint was filed (on April 5, 2016), Mother admits that she was still abusing heroin, (i.e. until November of 2016). One year later, on November 21, 2017, when LCCS filed the motion to transfer legal custody to Uncle, Mother had just tested positive for alcohol and cocaine and was found

9.

driving a car in which heroin was found. But, to Mother's credit, the record also indicates that Mother tested "clean" for drugs and alcohol between December of 2017 and the March 29, 2018 hearing.

{¶ 19} Likewise, the record demonstrates mixed success with regard to Mother's case plan services. For example, although she was referred to the RISE program in July of 2017, Mother's attendance there was "very minimal until February of [2018]." February of 2018 seems to have marked a positive turning point for Mother. By then, Mother was participating in services offered through Family Court and was proactively seeking therapy from her counselor at Unison. Indeed, the trial court commended Mother's recent efforts to maintain her sobriety and to engage in services, but it ultimately concluded that it was "insufficient to allow reunification at the time of the hearing." Given the duration of this case and the length of time it took for Mother to achieve sobriety and to engage in case planning services, we cannot say that the trial court abused its discretion by finding that Mother's progress was insufficient to allow reunification at the time of the hearing.

{¶ 20} Next, Mother refers to the CASA's testimony, that, although Mother had made progress, she was "still immature." Mother argues that the maturity level of a parent is not a "best interest factor." To the extent that the trial court may have considered Mother's maturity level in following its statutory mandate to consider "all relevant factors," we see no error in doing so.

{¶ 21} Finally, Mother argues that it was inconsistent to grant legal custody to Uncle, in light of the trial court's grant of unsupervised visitation with A.V. We fail to

10.

see the inconsistency. As noted by the trial court, Mother "maintains her right to request a change of custody at any time in the future [if she] can show a change of circumstances" under R.C. 3109.04(E)(1)(a). Allowing Mother unsupervised, overnight visits will hopefully serve as an incentive for her to continue her positive strides. In the meantime, A.V. remains in the legal custody of relatives who, according to the record, have bonded with the young girl and are providing excellent care.

{¶ 22} After reviewing the record, we find that the trial court did not abuse its discretion in granting legal custody of A.V. to Uncle. The court considered all relevant best interest factors before awarding custody to A.V., and its decision in weighing those factors in favor of Uncle is supported by a preponderance of the evidence. That determination is not arbitrary, unconscionable, or unreasonable. Accordingly, Mother's assignment of error is found not well-taken.

{¶ 23} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Mother is ordered to pay the court costs of this appeal pursuant to App. R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.             _____
                                           JUDGE
Christine E. Mayle, P.J.       

Gene A. Zmuda, J.              _____
CONCUR.                                       JUDGE

                                           _____
                                           JUDGE

11.

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.