[Cite as *In re S.M.*, 2023-Ohio-2686.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| In the Matter of S.M. and A.G., | : | |
| | : | Case No. 23CA4 |
| | : | |
| Adjudicated Dependent | : | |
| Children. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| | : | |
| | : | **RELEASED: 07/27/2023** |

_____

APPEARANCES:

Hannah Bivens, Greenfield, Ohio, for Appellant.

Anneka P. Collins, Highland County Prosecutor, and Molly Bolek, Highland County Assistant Prosecutor, Hillsboro, Ohio, for Appellee.

_____

Wilkin, J.

{¶1} Appellant, Mikayla Goble, appeals a decision of the Highland County Court of Common Pleas, Juvenile Division, that granted Matt and Robin Gray legal custody of her two-year-old child, S.M., and her two-month-old child, A.G. Appellant's two assignments of error assert that (1) the trial court abused its discretion by awarding the Grays legal custody of the children and (2) the court's decision is against the manifest weight of the evidence. After our review of the record and the applicable law, we do not find any merit to appellant's assignments of error. Therefore, we affirm the trial court's judgment.

FACTS AND PROCEDURAL BACKGROUND

{¶2} On March 24, 2021, Highland County Job and Family Services Agency, Children Services Division, ("the agency") filed a complaint alleging that S.M., then two

months old, was an abused, neglected, and dependent child. The complaint stated the agency learned that when S.M. was born, she tested positive for THC. When the agency located the parents, they admitted that they had used methamphetamine within the last three or four days, the purported father, Jerry Morris,[1] stated that he is an alcoholic, and appellant admitted that she used methamphetamine for years before she became pregnant. The parents submitted drug screens and both tested positive for THC, amphetamines, and methamphetamine. Additionally, appellant reported that she permanently lost custody of two other children when she lived in Kentucky. The complaint indicated that S.M. is in appellant's legal custody but is in a relative's physical custody pursuant to a safety plan (the complaint did not include the relative's name). The agency further requested temporary custody of S.M. in its complaint.

{¶3} On May 10, 2021, the trial court adjudicated S.M. dependent and dismissed the remaining allegations. The court additionally added the maternal grandparents as parties to the case. About one month later, the parties agreed to place S.M. in the agency's temporary custody until March 24, 2022.

{¶4} On August 19, 2021, the maternal grandparents filed a motion to modify the disposition to award them legal custody of S.M.

{¶5} On November 24, 2021, Matt Gray and Robin Henderson nka Gray (appellant's father's cousin) filed a motion to intervene and a motion for legal custody of S.M. They asserted that S.M. has been in their care since April 7, 2021. The court granted their motion to intervene.

---

[1] We observe that the initial case plan that the agency filed listed Jerry Morris as the father. On April 30, 2021, the agency filed a motion to add Joseph Morris as a party because he and appellant are married. After genetic testing showed that Joseph is not S.M.'s father, the court removed him as a party.

{¶6} On March 23, 2022, the trial court extended the temporary custody order for six months. The court noted that "[t]here has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension" and that the parties agreed to hold in abeyance the Grays' and the grandparents' motions for legal custody.

{¶7} On September 13, 2022, the agency filed a motion that asked the court to place S.M. in the Grays' legal custody. The agency alleged the following: (1) appellant had completed some in-patient treatment and had returned some negative drug panels, but on March 28, 2022, she was terminated from a program due to poor attendance; (2) appellant has not maintained stable housing; (3) around the time when the agency filed the complaint involving S.M., a Kentucky court had placed two of appellant's other children in a children-services agency's permanent custody; (4) the maternal grandparents had sought custody of these two children, but their home was not approved for placement due to an incorrect hydrocodone pill count; and (5) Highland County has not approved the grandparents' home as a placement for S.M.

{¶8} On September 16, 2022, appellant filed a motion for legal custody of S.M. She claimed that she has completed the case-plan requirements and that returning S.M. to her legal custody is in the child's best interest.

{¶9} On September 19, 2022, the court held the first of three hearings to consider the pending legal-custody motions. Caseworker Walter Curren testified as follows. The agency developed a case plan that required appellant to (1) complete an alcohol-and-drug assessment and follow any recommended treatment, (2) submit to

random drug screens, (3) complete a mental-health assessment, and (4) find stable housing and employment.  Appellant completed a drug-treatment program around February or March of 2022, submitted to all requested drug screens (which have been negative for the past six months), and completed mental-health counseling.

**{¶10}**  The agency had some concerns about appellant during May and June 2022.  Appellant stated that she had returned to Land of Goshen Treatment Center, but Curren could not confirm that she was there.  Appellant stated that she had returned to Land of Goshen because Jerry Morris had been stalking her.  Curren agreed that appellant has "shown substantial progress" and has made "a substantial change * * * in her habits."

**{¶11}**  Appellant currently lives with her parents.  The agency did not approve appellants' parents' home for placement because Kentucky thrice denied their home for placement and two of appellant's other children were placed in permanent custody.

**{¶12}**  S.M. is living with the Grays and seems "very bonded."  The agency recommends placing the child in the Grays' legal custody.

**{¶13}**  S.M.'s guardian ad litem testified that she visited the grandparents' home the week before the hearing and found it to be "very cluttered."  She does not think that the house is appropriate for the child.  She also has concerns about appellant's drug use because even though appellant tested negative in August 2022, the agency could not locate her in June or July and, thus, was unable to test her.

**{¶14}**  The guardian ad litem also indicated that S.M. is "very well bonded" in the Grays' home.  She recommended that the court grant them legal custody of S.M.

**{¶15}** Appellant testified that she has not used drugs since September 13, 2021, and if she were tested today, the results would be negative. Counsel for the agency asked appellant if she is pregnant, and appellant stated that she is not. After appellant's testimony, the court adjourned the hearing.

**{¶16}** On September 30, 2022, appellant's counsel filed a Prof.Cond.R. 3.3 notice with the court that stated appellant falsely testified at the September 19, 2022 hearing that she was not pregnant. Appellant's counsel stated that after the hearing, appellant informed counsel that she was, in fact, pregnant. Counsel advised appellant to notify the agency, which she did.

**{¶17}** Appellant gave birth to A.G. on December 27, 2022. Thereafter, on January 3, 2023, the agency filed a complaint alleging A.G. was a dependent child. The agency further requested emergency temporary custody, which the trial court granted. The court also set the matter for an adjudicatory hearing to be held on February 22, 2023, and for a disposition hearing to be held on February 28, 2023.

**{¶18}** On January 4, 2023, the court held a continued hearing to consider the legal-custody motions with regard to S.M. At the start, the agency recalled caseworker Curren. Counsel for the agency asked him whether he remembered appellant testifying at the September 2022 hearing that she was not pregnant, and he stated that he did. Curren then explained that a week or two after that hearing, he learned that appellant was, in fact, pregnant, and on December 27, 2022, appellant gave birth to the child. Appellant stated that the newborn's father is Corey Price. The agency learned that on December 6, 2022, Price had been indicted in the Highland County Common Pleas Court for one count of trafficking in methamphetamines and two counts of aggravated

possession of methamphetamines. Curren stated that the agency had concerns that appellant had associated and had a baby with a known drug user and dealer. He thus testified that the agency still recommends that the court award the Grays legal custody of S.M.

**{¶19}** The guardian ad litem testified again and stated that her recommendation remained the same.

**{¶20}** Robin (Maggie) Gray testified that S.M. has lived in her home since April 2021. Maggie does not work outside of the home, so she is available to take care of S.M. around-the-clock. S.M. has her own bedroom and a playroom.

**{¶21}** Maggie stated that S.M. "had issues with" smoking in the house, which the child apparently was exposed to when she visited the maternal grandparents' house. She indicated that it causes S.M. "to have congestion real bad," and that she treats it with medication and a humidifier. Maggie also explained that S.M. sometimes returned from visits at the maternal grandparents' house with dirt on her skin, diaper rashes, and yeast infections; and S.M. smelled "like smoke" or a "dirty dog."

**{¶22}** Maggie still has concerns about appellant's drug-use history. She does not believe that appellant can "stay away from the drugs." Plus, Maggie believes that appellant makes poor relationship choices.

**{¶23}** Matt Gray offered similar testimony, and then the court adjourned until the next hearing on February 22, 2023.

**{¶24}** In the meantime, the Grays filed a combined motion to intervene in A.G.'s case and a motion that requested legal custody of A.G. The maternal grandparents

also filed a motion to intervene. The court subsequently allowed both the Grays and the maternal grandparents to intervene.

{¶25} At the start of the next hearing, the court first held the adjudicatory hearing for A.G. Appellant admitted that A.G. is a dependent child. Additionally, the parties agreed to immediately proceed with A.G.'s disposition hearing and to allow the court to consider the evidence already presented during the previous two hearings in S.M.'s case when choosing an appropriate disposition for A.G.

{¶26} During the disposition hearing, Samantha Arnold from Another Chance Counseling Center testified that on February 21, 2022, appellant completed treatment at Land of Goshen and then was referred to Another Chance. On March 2, 2022, appellant underwent an assessment and was diagnosed with severe stimulant use disorder. Arnold recommended intensive outpatient services, individual sessions, and twice-weekly drug screens. Appellant complied with the recommended services for about two weeks. Appellant told Arnold that she stopped attending because the sessions interfered with her work schedule.

{¶27} Arnold stated that in September 2022, appellant reengaged with Another Chance. At that time, Arnold performed another assessment that placed appellant "into relapse prevention instead of" intensive outpatient services. Arnold stated that appellant has had negative drug screens since September 28, 2022, and that appellant self-reported that she was clean between March and September 2022.

{¶28} Amy Salyers, chief operations officer at Land of Goshen Treatment Center, testified that in May 2022, appellant returned to the treatment center "as more of a safety precaution." Salyers stated that she did not have any drug or alcohol concerns

at that time.  Salyers indicated that appellant left the center around the end of May

2022, because Jerry Morris had found her.

**{¶29}**  On February 27, 2023, the trial court placed the children in the Grays'

legal custody and granted appellant parenting time.  The court noted that appellant has

made some progress but found that she "is not currently a dependable adult ready and

capable of raising two young children."  This appeal followed.[2]

### ASSIGNMENTS OF ERROR

I.    THE TRIAL COURT ERRED BY GRANTING LEGAL CUSTODY TO MATERNAL COUSINS MATT GRAY AND ROBIN HENDERSON BY FAILING TO MEET THE LEGAL STANDARDS CONSTITUTING AN ABUSE OF DISCRETION AND SHOULD BE REVERSED.

II.   THE TRIAL COURT ERRED BY GRANTING LEGAL CUSTODY TO MATERNAL COUSINS MATT GRAY AND ROBIN HENDERSON AS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### LAW AND ANALYSIS

**{¶30}**  For ease of analysis, we have combined our review of appellant's two

assignments of error.

**{¶31}**  In her first assignment of error, appellant argues that the trial court erred

by granting the Grays legal custody of the children.  Appellant contends that the court's

decision "fail[s] to meet the legal standards," but she does not fully clarify which legal

standard the trial court purportedly failed to follow.  The argument beneath her

---

[2] On the same date as the trial court's decision, Corey Price, A.G.'s father, filed a pro se request for counsel.  On February 28, 2023, the court ordered the disposition "reset" as to Price's rights.  On March 30, 2023, the court noted that it had set a hearing for March 29, 2023, in order to consider "the [d]ispositional rights of Corey Price" and that Price was served with notice of the hearing.  Price's counsel appeared, but Price did not.  The court pointed out that Price had not contacted the court or his counsel. Additionally, the court, on the record with counsel present, called the institution where Price is located and left a message for him.  The court thus stated that its February 27, 2023 order is "a final appealable order."

assignment of error recites the abuse-of-discretion standard of review for juvenile-court child-custody decisions. Appellant further asserts that "parents who are suitable have a paramount right to the custody of their children." Appellant recognizes that a dependency finding implicitly involves a determination of the unsuitability of the child's parents. She contends, however, that the purpose of an agency's case plan and the agency's involvement with a family in an abuse, neglect, or dependency case is to attempt to remedy the parent's unsuitability so that the family can be reunified.

{¶32} Appellant asserts that she has complied with all of the case-plan requirements and has substantially remedied her unsuitability. She states that she (1) provided negative drug screens from September 2021 to February 2023, (2) completed inpatient and outpatient treatment, (3) maintained stable housing by living with her parents from March 2022 to February 2023, (4) completed mental-health assessments, (5) completed parenting classes, and (6) regularly visited the children. Appellant faults the trial court for ignoring the evidence and testimony of her witnesses who testified that she has made significant progress to overcome her addiction. She further charges that the trial court incorrectly speculated that history was bound to repeat itself. She, thus, asserts that the trial court abused its discretion by granting the Grays legal custody of the children.

{¶33} In her second assignment of error, appellant again asserts that the trial court erred by granting legal custody to the Grays. She claims that the trial court's judgment is against the manifest weight of the evidence. Appellant essentially reiterates her argument that she has substantially remedied her unsuitability.

## STANDARD OF REVIEW

{¶34} Because child-custody "issues are some of the most difficult and agonizing decisions" that trial courts must make, courts "have wide latitude" to consider all of the evidence, and appellate courts should not disturb a trial court's judgment absent an abuse of discretion. *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997); *accord In re A.J.*, 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733, ¶ 27; *Bragg v. Hatfield*, 152 Ohio App.3d 174, 2003-Ohio-1441, 787 N.E.2d 44 (4th Dist.), ¶ 24. As the Ohio Supreme Court has emphasized: "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record." *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). Thus, we may not reverse a trial court's decision if we simply disagree with it. *E.g., State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14. We may, however, reverse a trial court's legal-custody decision if the court made an error of law, if its decision is unreasonable, arbitrary, or unconscionable, or if substantial competent and credible evidence fails to support it. *Davis*, 77 Ohio St.3d at 418-419, 421 (explaining "abuse of discretion standard" and stating that courts will not reverse custody decisions as against the manifest weight of the evidence if substantial competent and credible evidence supports it, courts must defer to fact-finder, courts may reverse upon an error of law, and the trial court has broad discretion in custody matters).

LEGAL-CUSTODY PRINCIPLES

**{¶35}** We recognize that "parents' interest in the care, custody, and control of their children 'is perhaps the oldest of the fundamental liberty interests recognized by th[e United States Supreme] Court.' " *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 19, quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Indeed, the right to raise one's "child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990). Thus, "parents who are 'suitable' have a 'paramount' right to the custody of their children." *In re B.C.* at ¶ 19, quoting *In re Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977), citing *Clark v. Bayer*, 32 Ohio St. 299, 310 (1877); *In re Murray*, 52 Ohio St.3d at 157. This paramount-parental-right principle means that in a private-custody dispute, "a trial court must make a parental unsuitability determination on the record before awarding legal custody of the child to the nonparent." *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, syllabus.

**{¶36}** However, in an abuse, neglect, or dependency case, a juvenile court's abuse, neglect, or dependency adjudication "implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 23. Consequently, a trial court need not find a parent unsuitable before awarding legal custody of an adjudicated abused, neglected, or dependent child to a nonparent. *Id.* Instead, the abuse, neglect, or dependency adjudication essentially substitutes as a parental unsuitability determination, and at the dispositional stage, the juvenile court's primary consideration is the child's best interest. *E.g., In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862

N.E.2d 829, ¶ 11 ("[o]nce the case reaches the disposition phase, the best interest of the child controls"); *In re Cunningham*, 59 Ohio St.2d 100, 108, 391 N.E.2d 1034 (1979) (stating that child's "welfare and 'best interest' are the primary considerations in a dispositional hearing). Thus, at the dispositional stage, the inquiry "is not whether the parents of a previously adjudicated 'dependent' child are either fit or unfit." *Cunningham*, 59 Ohio St.2d at 106. Instead, parental fitness is "one factor that may enter into judicial consideration." *Id.* A parent's fitness, however, "does not automatically entitle the natural parent to custody of [the] child since the best interests and welfare of that child are of paramount importance." *Id.*, citing *Willette v. Bannister*, 351 So.2d 605, 607 (Ala.Civ.App. 1977). Consequently, "[p]arental interests must be subordinated to the child's interest in determining an appropriate disposition." *Id.*

LEGAL-CUSTODY STANDARD

{¶37} R.C. 2151.353(A) lists the dispositional options available in abuse, neglect, and dependency cases. As relevant here, R.C. 2151.353(A)(3) gives a trial court discretion to award legal custody of an abused, neglected, or dependent child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings." In addition, the court "may terminate or modify a prior dispositional order and award legal custody to a nonparent if doing so serves the child's best interest." *In re E.S.*, 4th Dist. Pickaway Nos. 17CA16 and 17CA17, 2018-Ohio-1902, ¶ 27.

{¶38} In order to award legal custody of an abused, neglected, or dependent child to a parent or other person, a trial court must find, by a preponderance of the

evidence, that legal custody to the parent or other person is in the child's best interest. *In re K.L.V.W.*, 8th Dist. Cuyahoga No. 112067, 2023-Ohio-1287, ¶ 28 and 30; *In re E.N.*, 4th Dist. Highland No. 21CA5, 2022-Ohio-116, ¶ 23. "A 'preponderance of the evidence' is 'evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it.' " *In re B.P.*, 191 Ohio App.3d 518, 2010-Ohio-6458, 946 N.E.2d 818, ¶ 43 (4th Dist.), quoting Black's Law Dictionary 1182 (6th Ed.1998).

{¶39} Although the child's best interest is the controlling principle in determining whether to award a parent or other person legal custody, R.C. 2151.353(A)(3) does not list any certain factors that guide the best-interest determination. For this reason, this court and others have looked to other statutory provisions that list best-interest factors such as R.C. 3109.04, R.C. 2151.414, and R.C. 3109.051. *In re E.N.*, 4th Dist. Highland No. 21CA5, 2022-Ohio-116, ¶ 25; *In re L.W.*, 3rd Dist. Wyandot No. 16-22-03, 2022-Ohio-3696, ¶ 62; *In re M.W.*, 2d Dist. Montgomery No. 29413, 2022-Ohio-2054, ¶ 13; *In re V.P.*, 8th Dist. Cuyahoga No. 109649, 2020-Ohio-5626, ¶ 32; *In re A.V.*, 6th Dist. Lucas No. L-18-1197, 2019-Ohio-1685, ¶ 14; *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850, 15CA010860, 2017-Ohio-1, ¶ 17; *In re Pryor*, 86 Ohio App.3d 327, 336, 620 N.E.2d 973 (4th Dist.1993); *see also* Best Interests of the Child, Black's Law Dictionary (11th ed. 2019) (explaining that the best-interest-of-the-child standard is one "by which a court determines what arrangements would be to a child's greatest benefit, often used in deciding child-custody and visitation matters and in deciding whether to approve an adoption or a guardianship" and listing some of the best-interest factors courts commonly consider as "the emotional tie between the child and the parent or guardian, the ability of a parent or guardian to give the child love and guidance, the

ability of a parent or guardian to provide necessaries, the established living arrangement between a parent or guardian and the child, the child's preference if the child is old enough that the court will consider that preference in making a custody award, and a parent's ability to foster a healthy relationship between the child and the other parent").

ANALYSIS

**{¶40}** In the case before us, appellant has not specifically challenged the trial court's best-interest determination. Instead, her assignments of error focus upon her case-plan compliance and the trial court's determination that appellant "remains unsuitable." She contends that she has substantially remedied her unsuitability. Because appellant has not set forth a specific argument regarding the children's best interest or any particular best-interest factors, we will not construct an argument for her. We simply note that nothing in the record suggests that the trial court acted unreasonably, arbitrarily, or unconscionably by concluding that awarding the Grays legal custody of the children is in their best interests. Additionally, the children's guardian ad litem indicated that awarding the Grays legal custody of the children is in their best interests. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 56 (observing that "[t]he trial court has discretion to accept the testimony of the guardian ad litem on the child's wishes").

**{¶41}** Moreover, as we stated above, the focus of a trial court's inquiry at the dispositional stage "is not whether the parents of a previously adjudicated 'dependent' child are either fit or unfit." *Cunningham*, 59 Ohio St.2d at 106. Rather, parental fitness is merely "one factor that may enter into judicial consideration," and it "does not

automatically entitle the natural parent to custody of [the] child since the best interests and welfare of that child are of paramount importance." *Id.*, citing *Willette v. Bannister*, 351 So.2d 605, 607 (Ala.Civ.App. 1977). Thus, even if appellant has substantially remedied her unsuitability, the trial court did not have a duty to place the children in her care.

**{¶42}** Additionally, the Ohio Supreme Court clearly has stated that once a child has been adjudicated abused, neglected, or dependent, a trial court need not find that a parent is unsuitable before awarding legal custody to a nonparent. *C.R.* at ¶ 23. Moreover, unlike the permanent-custody statute, the legal-custody provision contained in R.C. 2151.353(A)(3) does not list any predicate conditions that a trial court must find before awarding a nonparent legal custody of an adjudicated abused, neglected, or dependent child. The permanent-custody statute, R.C. 2151.414(B)(1), permits a trial court to grant permanent custody of a child to a children-services agency if the court determines that it is in the child's best interest and that any of the following apply:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> (b) The child is abandoned.
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

**{¶43}** R.C. 2151.353(A)(3) does not contain any of these or any other conditions that a trial court must find before it awards legal custody of an adjudicated abused, neglected, or dependent child to a nonparent.  Instead, it states as follows:

(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
* * * *
(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings.  A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody that contains at least the following provisions:
(a) That it is the intent of the person to become the legal custodian of the child and the person is able to assume legal responsibility for the care and supervision of the child;
(b) That the person understands that legal custody of the child in question is intended to be permanent in nature and that the person will be responsible as the custodian for the child until the child reaches the age of majority.  Responsibility as custodian for the child shall continue beyond the age of majority if, at the time the child reaches the age of majority, the child is pursuing a diploma granted by the board of education or other governing authority, successful completion of the curriculum of any high school, successful completion of an individualized education program developed for the student by any high school, or an age and schooling certificate. Responsibility beyond the age of majority shall terminate when the child ceases to continuously pursue such an education, completes such an education, or is excused from such an education under standards adopted by the state board of education, whichever occurs first;
(c) That the parents of the child have residual parental rights, privileges, and responsibilities, including, but not limited to, the privilege of

reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support;

(d) That the person understands that the person must be present in court for the dispositional hearing in order to affirm the person's intention to become legal custodian, to affirm that the person understands the effect of the custodianship before the court, and to answer any questions that the court or any parties to the case may have.

None of these provisions requires a trial court to evaluate a parent's suitability before awarding a nonparent legal custody of a child. Instead, a parent's suitability (or lack thereof) is simply one factor that a trial court may consider when evaluating a child's best interest. *Cunningham*, 59 Ohio St.2d at 106.

**{¶44}** Furthermore, even if appellant complied with all or some aspects of the case plan, as we have observed in the past, a parent's case-plan compliance may be a relevant, but not necessarily conclusive, factor when a court evaluates a child's best interest. *In re B.P.*, 4th Dist. Athens No. 20CA13, 2021-Ohio-3148, ¶ 57; *In re T.J.*, 4th Dist. Highland No. 2016-Ohio-163, ¶ 36, citing *In re R.L.*, 9th Dist. Summit Nos. 27214 and 27233, 2014-Ohio-3117, ¶ 34 ("although case plan compliance may be relevant to a trial court's best interest determination, it is not dispositive of it"); *In re S.C.*, 8th Dist. Cuyahoga No. 102349, 2015-Ohio-2280, ¶ 40 ("[c]ompliance with a case plan is not, in and of itself, dispositive of the issue of reunification"); *accord In re K.M.*, 4th Dist. Ross No. 19CA3677, 2019-Ohio-4252, ¶ 70, citing *In re W.C.J.*, 4th Dist. Jackson No. 14CA3, 2014-Ohio-5841, ¶ 46 ("[s]ubstantial compliance with a case plan is not necessarily dispositive on the issue of reunification"). "Indeed, because the trial court's primary focus in a [legal] custody proceeding is the child's best interest," a parent's case-plan compliance is not dispositive and does not prevent a trial court from awarding legal custody to a nonparent. *W.C.J.* at ¶ 46. Thus, a parent's case-plan compliance will not

preclude a trial court from awarding legal custody to a nonparent when doing so is in the child's best interest. *Id.*; *accord In re P.V.A.*, 11th Dist. Ashtabula No. 2022-A-0097, 2023-Ohio-1622, ¶ 19; *In re J.M.*, 2nd Dist. Montgomery No. 28508, 2020-Ohio-822, ¶ 15. Accordingly, even if appellant fully complied with the case plan, her compliance does not mean that the trial court had an obligation to place the children in her custody. Rather, the trial court's obligation was to choose the dispositional option that would serve the children's best interests.

{¶45} We do not intend to minimize appellant's case-plan progress. She appears to have made tremendous strides to overcome her addiction. Nevertheless, the trial court found that appellant has not established a suitable home for the children. Instead, appellant continues to live with her parents. The agency did not approve her parents' home as a placement for the children, and a Kentucky children-services agency had determined that their home was not an appropriate placement. Additionally, the guardian ad litem stated that appellant's parents' home was not a suitable placement for the young children.

{¶46} The trial court also noted that during the pendency of S.M.'s case, appellant had contact with Corey Price, a person later convicted of drug-related offenses, and this contact resulted in a pregnancy. Appellant lied about the pregnancy during the September 19, 2022 hearing. The court found it concerning that she (1) became pregnant with a drug-dealer-and-user's child and (2) had lied about her pregnancy. The court questioned whether appellant had "truly conquered her drug addiction" and would be able to refrain from similar behavior in the future. The court also pointed out that appellant only recently had applied for housing assistance. The

court thus did not believe that appellant's actions displayed that she "is ready to raise two very young children."

**{¶47}** Furthermore, although appellant faults the trial court for speculating as to her future behavior based upon her past conduct, this court and others have recognized that "a parent's past history is one of the best predictors of future behavior." *In re West*, 4th Dist. Athens No. 05CA4, 2005-Ohio-2977, ¶ 28; *e.g., In re B.J.*, 4th Dist. Scioto No. 22CA3991, 2022-Ohio-3307, ¶ 59; *In re B.B.*, 10th Dist. Franklin No. 20AP-488, 2021-Ohio-2299, ¶ 34; *accord In re A.S.,* Butler App. Nos. CA2004-07-182 and CA2004-08-185, 2004-Ohio-6323 ("[p]ast history is often the best predictor of future conduct."); *In re Vaughn*, 4th Dist. Adams No. 00CA692 (Dec. 6, 2000) ("[s]ome of the most reliable evidence for the court to consider is the past history of the children and the parents."); *In re Burchfield*, 51 Ohio App.3d 148, 156-57, 555 N.E.2d 325 (4th Dist.1988), quoting *In re Bishop*, 36 Ohio App.3d 123, 126, 521 N.E.2d 838 (5th Dist.1987) (citations omitted) (" '[t]he unfitness of a parent, guardian or custodian can be predicted by past history' ").

**{¶48}** Appellant's past history shows that (1) she had used drugs for many years before S.M.'s birth, (2) she already lost custody of two children, (3) she had a baby with a drug dealer and user while S.M.'s case was pending, (4) she lied about being pregnant, (5) she complied with most of the case-plan requirements, (6) she reports that she has not used drugs since September 13, 2021, (7) she left Land of Goshen in May 2022, (8) after appellant left Land of Goshen, the agency could not locate her for drug testing until August 1, 2022, and (9) in the nearly two years that S.M.'s case was pending, she has not found a suitable home for the children. The trial court rationally

could have decided that appellant's past history did not predict a future in which she would be more likely than the Grays to protect the children's best interests.

{¶49}  Additionally, as this court often notes:

" '*** [A] child should not have to endure the inevitable to its great detriment and harm in order to give the [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination.  The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the [parent].  * * *  The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm.' "

*In re B.J.*, 4th Dist. Scioto No. 22CA3991, 2022-Ohio-3307, ¶ 61, quoting *Bishop*, 36 Ohio App.3d at 126, quoting *In re East*, 32 Ohio Misc. 65, 69, 288 N.E.2d 343 (C.P. 1972).

{¶50}  In the case before us, the trial court had no obligation to test appellant's suitability by returning the children to her care and experimenting with their welfare.  All of the evidence presented at the hearings shows that the Grays provide the children with proper care and that the agency has no concerns about the children's welfare while in their care.  The trial court, therefore, reasonably could have determined that continuing the children in the stability of the Grays' home is in their best interests.

{¶51}  Therefore, appellant's arguments that the trial court abused its discretion by awarding the Grays legal custody of the children and that its judgment is against the manifest weight are without merit.  Accordingly, we overrule appellant's two assignments of error.

CONCLUSION

{¶52}  Having overruled appellant's two assignments of error, we affirm the trial court's judgment.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.:  Concur in Judgment and Opinion.

For the Court,


BY: _____
Kristy S. Wilkin, Judge



**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**