[Cite as *In re E.H.*, 2016-Ohio-8170.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

In re E.H.

Court of Appeals No. OT-15-044

Trial Court No. 21430005

**DECISION AND JUDGMENT**

Decided: December 16, 2016

* * * * *

Howard C. Whitcomb, III, for appellant mother.

John A. Brikmanis, for appellee father.

Mark E. Mulligan, Ottawa County Prosecuting Attorney, and
Emily M. Gerber, Assistant Prosecuting Attorney, for appellee
Ottawa County Department of Job and Family Services.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from the judgment of the Ottawa County Court of

Common Pleas, Juvenile Division, which awarded legal custody of the minor child, E.H.,

to her biological father, D.D. For the reasons that follow, we affirm.

## I.  Facts and Procedural Background

**{¶ 2}** E.H.'s biological mother, T.H., and her husband, S.H., were unable to conceive a child.  Consequently, they asked their friend, D.D., if he would donate sperm to help them conceive.  D.D. and his wife, M.D., agreed, and D.D. provided a sperm sample.  Subsequently, E.H. was born in July 2011.  The couples agreed that T.H. and S.H. would raise the child as their own, and D.D. would have no parental responsibilities or obligations.

**{¶ 3}** E.H. spent 90 of the first 130 weeks of her life in hospitals.  At four months of age, E.H. was diagnosed with a genetic disorder known as Beckwith-Wiedemann Syndrome ("BWS").  She had tubes inserted to provide her with nutrition and underwent several surgeries to remove her appendix, gall bladder, and part of her pancreas.  She also had her intestines mal-rotated.  In addition, E.H. suffered from an unprecedented number of infections at the insertion points of the tubes and central lines.

**{¶ 4}** In early 2014, the Cleveland Clinic notified the Ottawa County Department of Job and Family Services ("OCDJ&FS") of possible medical abuse.  Throughout the course of E.H.'s care, the doctors stressed the importance of pushing regular feedings, and diminishing the reliance on total parenteral nutrition.  However, T.H. and S.H. did not support this plan, and were convinced that the feedings would not work, despite indications that E.H. was improving.  On January 4, 2014, the doctors at the Cleveland Clinic placed a 24-hour "babysitter" in E.H.'s room, after which E.H. improved and T.H. was no longer reporting that the child was showing symptoms.  The doctors then

2.

concluded that E.H. did not suffer from BWS, yet felt that T.H. and S.H. were surprisingly disappointed by this finding and displayed a lack of joy regarding E.H.'s progress. "Combining this with care being sought at a variety of institutes and to diagnoses and procedures being driven by [T.H.]'s unfounded reports, [the doctors] felt the need to report [their] strong suspicions that this child has suffered, and faces the threat of further suffering, from unnecessary and harmful medical care due to the persistence of the mother."

{¶ 5} On February 11, 2014, OCDJ&FS filed a complaint alleging that E.H., as well as her older brother J.H., were abused, neglected, or dependent. A shelter care hearing was held the next day, following which temporary custody of E.H. was awarded to OCDJ&FS. E.H. was placed in the care of a foster family.

{¶ 6} The matter proceeded to an adjudication hearing that spanned five days. Thereafter, on August 6, 2014, the trial court found that OCDJ&FS had not proven by clear and convincing evidence that E.H. or J.H. were abused or neglected. Further, the court found that OCDJ&FS had not proven that J.H. was dependent. However, the trial court did find by clear and convincing evidence that E.H. was dependent. A disposition hearing was held on August 26, 2014, following which the court found that OCDJ&FS had made reasonable efforts to prevent the continued removal of E.H. from the home, and ordered that temporary custody of E.H. continue with OCDJ&FS.

{¶ 7} Contemporaneously with the adjudication hearing, D.D. was identified as the biological father of E.H. Case plan services were provided for T.H. and S.H., as well

3.

as D.D. and M.D.  As part of the case plan services, all parties were to complete a psychological evaluation at Court Diagnostic and Treatment Center, conducted by Dr. Mark Pittner.  In addition, OCDJ&FS set up supervised visitation between the sets of parents and E.H.  On December 12, 2014, D.D. moved for legal custody of E.H.  Likewise, on January 21, 2015, OCDJ&FS moved to modify the disposition and award legal custody of E.H. to D.D.  On February 4, 2015, the parties agreed that E.H. should be placed in the temporary custody of D.D. pending the dispositional hearing on the motions.

{¶ 8} The motions came for a hearing over the course of five days in September 2015.  On November 5, 2015, the trial court entered its judgment granting the motions and awarding legal custody of E.H. to D.D.

## II.  Assignments of Error

{¶ 9} T.H. has timely appealed the trial court's November 5, 2015 decision, and now asserts four assignments of error for our review:

I.  The trial court abused its discretion by not ordering the reunification of E.H. to appellant mother at the completion of caseplan services.

II.  The trial court's finding that the children services agency exercised reasonable efforts violated mother's due process rights as guaranteed by the 14th Amendment of the U.S. Constitution and Article 1, Section 16, of the Ohio Constitution.

4.

III. Appellant mother's fundamental right to raise the minor child E.H. in this case as guaranteed by the 14th Amendment of the U.S. Constitution and Article 1, Section 16, of the Ohio Constitution outweighed any legitimate governmental interest preventing the return of E.H. to her mother at the completion of case plan services.

IV. The trial court's finding that the minor child E.H. not be reunified with appellant mother was against the manifest weight of the evidence presented at trial.

### III. Analysis

{¶ 10} T.H.'s assignments of error overlap and are interrelated, thus we will address them together.

{¶ 11} In her first assignment of error, T.H. argues that the trial court abused its discretion when it awarded legal custody of E.H. to D.D, despite the fact that T.H. completed the caseplan services required of her. T.H. specifically notes that the trial court only found that E.H. was a dependent child, and was not abused or neglected. In addition, T.H. argues that the trial court's decision was arbitrary and unreasonable because it relied on Pittner's report, which she contends was flawed and biased. Finally, T.H. asserts that the evidence indicates that none of the adults, including her, were displaying any mental health problems that warranted services.

{¶ 12} In her second assignment of error, T.H. argues that the trial court's finding that OCDJ&FS exercised reasonable efforts violated her due process rights.

5.

Additionally, T.H. argues that the court's decision not to reunify her with E.H. violated her due process rights. In support, T.H. lists 34 assertions, which mostly reference the caseworker's alleged bias and prejudice against T.H., and the caseworker's alleged failure to attend visitations or conduct thorough investigations into T.H.'s home, T.H.'s relationship with J.H., and the progress that T.H. made with her counselor. In addition, T.H. states that Pittner's report was biased, that it was completed without interviewing any of the parties' children, and that it was based on a faulty presumption that T.H. engaged in a "pattern of omissions" regarding the information she presented to healthcare providers. Lastly, T.H. notes that she has consistently demonstrated commitment to E.H. by attending visitations, paying child support, attempting to remain engaged in E.H.'s healthcare, and providing food, clothing, and personal items to E.H.

{¶ 13} In her third assignment of error, T.H. contends that the trial court's decision not to reunify her with E.H. violated her constitutional rights as there was no legitimate governmental interest advanced by OCDJ&FS that outweighed her right to raise E.H.

{¶ 14} Finally, in her fourth assignment of error, T.H. repeats the list of assertions made in her second assignment of error, and concludes that the trial court's decision was against the manifest weight of the evidence.

{¶ 15} We review the trial court's decision awarding legal custody under an abuse of discretion standard. *In re K.V.*, 6th Dist. Lucas No. L-11-1087, 2012-Ohio-190, ¶ 19. An abuse of discretion connotes that a trial court's attitude is unreasonable, arbitrary, or

6.

unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 16} "At any hearing in which a court is asked to modify or terminate an order of disposition issued under section 2151.353, 2151.415, or 2151.417 of the Revised Code, the court, in determining whether to return the child to the child's parents, shall consider whether it is in the best interest of the child." R.C. 2151.42(A). "[C]ourts have looked to the best interest factors of R.C. 2151.414(D), R.C. 3109.04(F)(1), a combination of the two, or general notions of what should be considered regarding the best interests of the [child]." *In re A.K.*, 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 25.

{¶ 17} Here, in determining what is in the best interest of E.H., the trial court expressly considered the factors in R.C. 2151.414(D)(1):

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child * * *;

(d) The child's need for a legally secure permanent placement * * *;

7.

as well as the factors in R.C. 3109.04(F)(1):

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make child support payments, including all arrearages * * *;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused or a neglected child * * *;

* * *

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶ 18}** Of note, the court found that E.H. is now enjoying full health and is adjusting well to living with D.D. E.H. also has a good relationship with T.H., S.H., and J.H.; she is excited to see them and is affectionate. Recently, E.H. has become increasingly upset when the visits end, but T.H. and S.H. have handled E.H.'s anxiety appropriately, and she is able to quickly recover and is usually happy to see D.D. and M.D. The court also found that Dr. Pittner determined that T.H. met the criteria for "Factitious Disorder/Medical Child Abuse." Lastly, the court found that E.H.'s guardian ad litem, and her attorney, both recommended that an award of legal custody to D.D. is in E.H.'s best interest.

**{¶ 19}** In addition to considering the above factors, the trial court determined that T.H. and S.H. have at no time "admit[ted] any wrongdoing or even acquiesce[d] that their actions may not have been in accord with the child's progress." Rather, T.H. continues to assert that she has been treated unfairly by the caseworkers, that one of the caseworkers failed to conduct an appropriate investigation, was biased, and unduly influenced the court and "corrupted" Dr. Pittner through email communication. Despite T.H.'s protestations that Dr. Pittner did not follow T.H.'s understandings of what he was supposed to do, the court found that Dr. Pittner's report was clearly based "upon psychological testing, clinical interventions and a *complete* review of medical records

9.

provided by the State as well as by [S.H. and T.H.]." (Emphasis sic.). Finally, the court noted Dr. Pittner's testimony that there is no proven intervention for Factitious Disorder, primarily due to the parent's denial. In accordance with its findings and determination, the trial court concluded that it is in the best interest of E.H. to be placed in the legal custody of D.D.

{¶ 20} Upon our review of the record, we find that the trial court's decision to award legal custody of E.H. to D.D. was not unreasonable, arbitrary, or unconscionable. In reaching its decision, the trial court considered each of the enumerated factors. In addition, the trial court's decision was based in part on Dr. Pittner's report. T.H. argues that Dr. Pittner's report was biased and based on incomplete or inaccurate evidence, and during the videotaped deposition that was entered into evidence at the hearing, T.H. cross-examined Dr. Pittner on these points. Nevertheless, the trial court found him to be credible, and relied on his report. Here, we do not find the trial court's reliance to be an abuse of discretion, particularly where the trial court specifically noted that Dr. Pittner considered *all* of the medical evidence,[1] and where Dr. Pittner's conclusion is consistent with the reality that while with T.H., E.H. was frequently undergoing invasive medical treatments for symptoms that disappeared once she was placed on 24-hour monitoring and removed from T.H.'s care. Notably, at the time of the dispositional hearing, E.H. was a normal, happy, and healthy child, and did not require any medical intervention.

---

[1] The medical evidence consisted of several boxes of records, including voluminous records provided by T.H.'s counsel.

10.

Therefore, we hold that the trial court did not abuse its discretion when it awarded legal custody of E.H. to D.D.

{¶ 21} Turning to T.H.'s argument that OCDJ&FS failed to exercise reasonable efforts to reunite E.H. with T.H., we initially note that a finding of reasonable efforts was not required. Relevant here, R.C. 2151.419(A), which imposes an obligation on trial courts to find that reasonable efforts have been made to prevent the removal of the child from the home, only applies to hearings held pursuant to R.C. 2151.353. In this case, the dispositional hearing held pursuant to R.C. 2151.353 occurred on August 26, 2014, and was not raised as part of this appeal. Rather, the judgment which T.H. is appealing followed a hearing held pursuant to R.C. 2151.415, which provides for a dispositional hearing on the motion of OCDJ&FS. Furthermore, R.C. 2151.415 does not independently require a finding that the agency exercised reasonable efforts to reunify the family.

{¶ 22} Nevertheless, the trial court made a specific determination that OCDJ&FS "has made reasonable efforts to make it possible for the child to safely return to the home of a parent through the provision of supportive services." The court listed some of those efforts as providing case plan services to T.H. and S.H., arranging visits with E.H. and providing transportation if necessary, referring E.H. for speech and occupational therapy, meeting with T.H. and S.H. monthly to review case plan compliance before E.H. was placed with D.D., arranging increased visits for T.H. and S.H. with E.H. at a facility closer to T.H.'s home, engaging in email communication with T.H.'s counsel regarding

11.

E.H.'s medical appointments and therapy session, and obtaining a forensic psychological evaluation of the parents and their spouses at Court Diagnostic and Treatment Center.

{¶ 23} We review a trial court's finding that an agency made reasonable efforts toward reunification under a manifest weight of the evidence standard. *See In re Er.P.*, 6th Dist. Lucas No. L-14-1006, 2014-Ohio-2831, ¶ 24-25. "In a reasonable efforts determination, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." *In re S.R.*, 6th Dist. Lucas Nos. L-12-1298, L-12-1326, 2013-Ohio-2358, ¶ 21. "A 'reasonable effort' is an 'honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage.'" *Id.*, quoting *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011 (12th Dist.1992).

{¶ 24} Upon review, we hold that the trial court's finding was not against the manifest weight of the evidence. This case is unique in that, by all accounts, T.H.'s home was more than adequate, it is clear that T.H. and S.H. love E.H. and care for her, and there are no allegations of drug use, domestic violence, or verbal abuse. Rather, E.H. was removed from the home because of the persistent medical treatment sought by T.H., which the doctors have determined to be unnecessary. Thus, in providing services, OCDJ&FS found a safe initial placement for E.H., set up supervised visitations between E.H., T.H., and S.H., and communicated with T.H. and S.H. on an ongoing basis. Further, OCDJ&FS referred the parents for a psychological evaluation. Based upon that evaluation, Dr. Pittner concluded that T.H. met the criteria for "Factitious

12.

Disorder/Medical Child Abuse." He further opined that there is no known effective treatment for that disorder, and that E.H. would remain at risk with T.H. until she was old enough to protect herself. Therefore, with no known treatment, it was reasonable for OCDJ&FS to not provide additional services.

{¶ 25} Notably, T.H. argues that the caseworker was prejudiced against her, and that Dr. Pittner's report was biased and based on inaccurate information. As to the latter, the trial court's finding that Dr. Pittner considered all of the medical records is supported by Dr. Pittner's testimony to that effect. Additionally, while T.H. argues that Dr. Pittner failed to interview any of the children of the parties, he determined it was not necessary to interview them, and the trial court's judgment entry only ordered T.H., S.H., D.D., and M.D. to participate in the forensic and custody evaluation. As to the former, the record does not demonstrate that T.H. was denied any necessary services. Rather, the caseworker maintained communication with T.H. or her counsel, reviewed the notes from the supervised visitations, met with T.H. and S.H. in their home, had a home study and background check completed for D.D., and referred the parties for a psychological evaluation. Thus, we find to be without merit T.H.'s arguments that the trial court's finding of reasonable efforts was against the manifest weight of the evidence.

{¶ 26} Finally, regarding T.H.'s argument that the trial court unconstitutionally infringed on her right to raise E.H., we note that T.H. does not challenge R.C. 2151.415 and 2151.42 as unconstitutional. Instead, she argues that it was unconstitutional to award legal custody of E.H. to D.D. where there was no legitimate governmental interest

13.

advanced by OCDJ&FS. However, OCDJ&FS has a compelling governmental interest in the health and safety of E.H., who had been adjudicated as a dependent child by the trial court. Moreover, T.H.'s remaining arguments that she completed her case plan services, engaged in personal counseling, and maintained a stable home, assert error in the trial court's decision to award legal custody of E.H. to D.D., but they do not assert a violation of due process. *See In re T.J.*, 10th Dist. No. 10AP-201, 2010-Ohio-4191, ¶ 11.

{¶ 27} Accordingly, because we hold that the trial court's award of legal custody is not an abuse of discretion, and the trial court's finding of reasonable efforts is not against the manifest weight of the evidence, appellant's assignments of error are not well-taken.

## IV. Conclusion

{¶ 28} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Ottawa County Court of Common Pleas, Juvenile Division, is affirmed. T.H. is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE