[Cite as *In re J.C.*, 2023-Ohio-3299.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

IN THE MATTER OF: : 
 :
 J.C. : Case No. 23CA920
 :
 Adjudicated Abused, :
 Neglected, And Dependent :
 Child. :
 :
 :
 :
 : DECISION AND JUDGMENT
 : ENTRY
 :
 : **RELEASED 9/14/2023**

---

## APPEARANCES:

Karyn Justice, Portsmouth, Ohio, for Appellant.

Rebecca D.L. Waigand, Wellston, Ohio, for Appellees.

---

Smith, P.J.

{¶1} Appellant, Amanda Curtis, appeals the trial court's decision that granted legal custody of her child, J.C., to Appellees, Karen and John Curtis, the maternal grandparents. Appellant argues that the trial court erred by determining that granting legal custody of J.C. to Appellees is in his best interest. For the reasons that follow, we do not find any merit to Appellant's assignment of error. Therefore, we overrule Appellant's assignment of error and affirm the trial court's judgment.

FACTS

{¶2} On November 19, 2021, Appellant gave birth to J.C.  Shortly thereafter, Pike County Children Services Board ("the agency") received a report that J.C. tested positive for methamphetamine and amphetamine.  On November 23, 2021, the court placed J.C. in the agency's emergency temporary custody.  The next day, the agency filed a complaint that alleged J.C. is abused, neglected, and dependent and that requested temporary custody of him.  The complaint stated that the parents refused to sign a safety plan to place J.C. in the maternal grandmother's care and that the agency nevertheless placed him with the maternal grandmother.

{¶3} On December 6, 2021, Appellees filed a motion to intervene.  They alleged that J.C. currently is in their care.  They further asserted that earlier in 2021, the Jackson County Common Pleas Court awarded them legal custody of Appellant's two other children, O.C. and R.C.  Appellees later filed a motion for legal custody of J.C., and the trial court subsequently granted their motion to intervene.

{¶4} On January 21, 2022, the court adjudicated J.C. an abused, neglected, and dependent child and continued him in the agency's temporary custody pending disposition.

{¶5} At disposition, the court placed J.C. in Appellees' temporary custody subject to the agency's protective supervision.

{¶6} On November 10, 2022, the court held a hearing to consider Appellees' legal custody motion.  Pike County Probation Officer Travis Holden testified that Appellant has participated in drug court since February 2022.  Officer Holden stated that Appellant recently has been doing well and has not had any positive drug screens or behavioral issues.  He explained that the drug court program consists of four phases and that Appellant is in phase two.

{¶7} Caseworker Christine Myers testified that the parents have made progress with their case plan goals but have not yet completed them.  Myers explained that at the moment, neither parent is able to take custody of J.C.  She reported that the parents remain in treatment facilities and that they, thus, do not have appropriate housing for J.C.  Myers nonetheless stated that the parents are making progress, and the agency considers them to be in compliance with the case plan.  For this reason, the agency has requested a six-month temporary custody extension.

{¶8} When asked whether Myers believes that placing J.C. in Appellees' legal custody is in his best interest, she stated, "that's a complicated question to answer."  Myers indicated that J.C. has his needs met with Appellees and that he is bonded with Appellees and his other siblings who live in the home.  Myers also reported that Appellant interacts appropriately with J.C. and appears bonded to him.  In the end, she stated that the agency's case plan goal remains reunification.

{¶9} The maternal grandmother testified that J.C. has lived with her since he was five days old. She stated that she also has custody of appellant's two other children, O.C. and R.C. The grandmother explained that she obtained custody of O.C. and R.C. after Appellant and the father abandoned them in her home. She related that in early 2020, Appellant and the father were living in her home. About six weeks after R.C.'s birth, the grandmother told Appellant and the father that they needed to get jobs. Rather than finding jobs, the parents "packed all their stuff up and then left" without R.C. or O.C. After not hearing from the parents for about five months, the grandmother decided to seek legal custody of the children. She related that neither parent appeared at any of the court hearings involving R.C. or O.C. and that the court later granted her custody of the children.

{¶10} The grandmother recognized that Appellant and the father have improved since they started treatment. She stated, however, that when the parents visit J.C. at her home, they appear "more compatible with each other." The grandmother also does not believe that the father appears comfortable providing care for a baby. Appellant, on the other hand, changed J.C.'s diaper, fed him, and rocked him to sleep. The grandmother reported that J.C. is doing well in her home.

{¶11} The maternal grandfather testified that he and the grandmother have not allowed Appellant to visit R.C. or O.C. when they visit J.C. He explained that he and the grandmother "think that if they come now get messed up later get all

their kids know them or expect them to be there and they not show up [sic].  You know what I mean?  The other kids would take it harder than the baby would."  The grandfather stated that if the parents continue to do well with their treatment and remain drug free, then he would be willing to facilitate visits with the other children.

{¶12} Appellant testified that she currently lives at Georgie Harris House, a treatment facility.  She explained that on January 3, 2022, she first entered Georgie Harris House, but she only stayed there until February 22, 2022.  Appellant reported that the facility discharged her due to her attitude.  Appellant stated that she then went to Focus, where she remained until May 2022.  At that time, the facility discharged her, and she went to jail for 16 days.  Upon her release from jail, she went to a third treatment facility.  She later encountered transportation issues, however, and left that facility.  In September 2022, she returned to Georgie Harris House.  Appellant claimed that since entering treatment, she has not had any positive drug screens.

{¶13} J.C.'s guardian ad litem testified and recommended that the court place him in Appellees' legal custody.  The guardian ad litem explained that although he is not opposed to a six-month extension, he is not "sure if the custody recommendation will change in six months."  Instead, he believed that more time

might give him additional information regarding an appropriate visitation plan for the parents.

{¶14} On January 9, 2023, the trial court granted Appellees legal custody of J.C. and denied the agency's request for a six-month extension. The court stated that it considered the best interest factors set forth in R.C. 3109.051 and found that it is in J.C.'s best interest to place him in Appellees' legal custody. The court granted Appellant and the father visitation time with J.C. This appeal followed.

## ASSIGNMENT OF ERROR

I.    THE COURT ERRED WHEN IT FOUND THAT GRANTING LEGAL CUSTODY OF J.C. TO HIS MATERNAL GRANDPARENTS WAS IN HIS BEST INTERESTS.

## LAW AND ANALYSIS

{¶15} In her sole assignment of error, Appellant argues that the trial court erred by determining that granting legal custody of J.C. to Appellees is in his best interest. She asserts that the evidence fails to support a finding that Appellees "will abide by the visitation orders or foster a relationship between [J.C.] and his parents." Appellant states that Appellees "willfully deny" her visitation time or contact with J.C.'s siblings, O.C. and R.C. She claims that Appellees' failure to allow her to visit the other children shows that placing J.C. in their legal custody is not in J.C.'s best interest. Instead, Appellant implies that if Appellees have denied

her the ability to see the other children, then they likewise will deny her visitation time with J.C.

{¶16} Appellant additionally contends that she has made "significant progress" toward the case plan goals and that J.C. "can be reunited with his parents within a reasonable time." Appellant thus argues that the trial court erred by denying the agency's request for a six-month extension.

STANDARD OF REVIEW

{¶17} "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, 953 N.E.2d 302, ¶ 14. Consequently, we review a trial court's decision to award a party legal custody of an abused, neglected, or dependent child for an abuse of discretion, and we afford its decision "the utmost deference." *In re E.W.*, 4th Dist. Washington Nos. 10CA18, 10CA19, and 10CA20, 2011-Ohio-2123, ¶ 18, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988); *accord In re A.J.*, 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733, ¶ 27, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 417, 674 N.E.2d 1159 (1997) (stating that "a trial court's decision in a custody proceeding is subject to reversal only upon a showing of abuse of discretion"); *In re A.L.P.*, 4th Dist. Washington No. 14CA37, 2015-Ohio-1552, ¶ 15; *In re C.J.L.*, 4th Dist. Scioto No. 13CA3545, 2014-Ohio-1766, ¶ 12. Ordinarily, "[t]he term 'abuse of discretion' implies that the trial court's

attitude was unreasonable, arbitrary, or unconscionable." *In re H.V.*, 138 Ohio

St.3d 408, 2014-Ohio-812, 7 N.E.3d 1173, ¶ 8.  In *Davis*, however, the court

explained the abuse-of-discretion standard that applies in child custody

proceedings as follows:

> The standard for abuse of discretion was laid out in the leading case of *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, but applied to custody cases in *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus:
>
>> "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. (*Trickey v. Trickey* [1952], 158 Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and followed.)"
>
> The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page.  As we stated in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80-81, 10 OBR 408, 410-412, 461 N.E.2d 1273, 1276-1277:
>
>> "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * *
>>
>> * * * A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court.  A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.    The determination of credibility of testimony and evidence

> must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal."

> This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does *not* translate to the record well.

*Id.* at 418-419 (emphasis sic).

{¶18} Accordingly, reviewing courts should afford great deference to trial-court child-custody decisions. *A.L.P.* at ¶ 16; *E.W.* at ¶ 19, citing *Pater v. Pater*, 63 Ohio St.3d 393, 396, 588 N.E.2d 794 (1992). Additionally, because child custody issues involve some of the most difficult and agonizing decisions that trial courts are required to decide, courts must have wide latitude to consider all of the evidence, and appellate courts should not disturb a trial court's judgment absent an abuse of discretion. *Davis*, 77 Ohio St.3d 418; *Bragg v. Hatfield*, 152 Ohio App.3d 174, 2003-Ohio-1441, 787 N.E.2d 44, ¶ 24 (4th Dist.); *Hinton v. Hinton*, 4th Dist. Washington No. 02CA54, 2003-Ohio-2785, ¶ 9; *Ferris v. Ferris*, 4th Dist. Meigs No. 02CA4, 2003-Ohio-1284, ¶ 20. As the Ohio Supreme Court has emphasized:

> In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record.

*Trickey*, 158 Ohio St. at 13.

{¶19} Thus, this standard of review does not permit us to reverse a trial court's decision if we simply disagree with it.  We may, however, reverse a trial court's custody decision if the court made an error of law, if its decision is unreasonable, arbitrary, or unconscionable, or if substantial competent and credible evidence fails to support it.  *Davis*, 77 Ohio St.3d at 418-419, 421 (explaining "abuse of discretion standard" and stating that courts will not reverse custody decisions as against the manifest weight of the evidence if substantial competent and credible evidence supports it, courts must defer to fact finder, courts may reverse upon error of law, and trial court has broad discretion in custody matters).

{¶20} "While we might be 'perplexed' by this hybrid abuse-of-discretion-manifest-weight standard, the Ohio Supreme Court has not overruled, modified, or clarified the standard set forth in *Bechtol* or *Flickinger*."  *In re E.S.*, 4th Dist. Pickaway No. 17CA16, 2018-Ohio-1902, ¶ 23, citing *A.L.P.* at ¶ 23 (Harsha, J., concurring).  We therefore continue to apply this standard when reviewing child-custody matters that do not involve the termination of parental rights.  *E.S.* at ¶ 23.

PARENTAL RIGHTS

{¶21} " 'The right of a parent to the custody of his or her child is one of the oldest fundamental liberty interests recognized by American courts.' "  *State ex rel. Otten v. Henderson,* 129 Ohio St.3d 453, 2011-Ohio-4082, 953 N.E.2d 809, ¶ 31, quoting *In re Thompkins,* 115 Ohio St.3d 409, 2007-Ohio-5238, 875 N.E.2d 582, ¶

10; *accord In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 19;

*Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

Consequently, "[p]arents have a constitutionally protected due process right to

make decisions concerning the care, custody, and control of their children, and the

parents' right to custody of their children is paramount to any custodial interest in

the children asserted by nonparents." *Mullen* at ¶ 11.  Nevertheless, a parent's

paramount right to custody of his or her children "is not absolute." *In re D.A.*, 113

Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 11.  Instead, " 'the natural

rights of a parent * * * are always subject to the ultimate welfare of the child,

which is the polestar or controlling principle to be observed.' " *In re Cunningham,*

59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.,* 300 So.2d

54, 58 (Fla.App.1974); *accord B.C.* at ¶ 20.  Thus, once an abuse, neglect, or

dependency case "reaches the disposition phase, the best interest of the child

controls." *D.A.* at ¶ 11; *accord In re Pryor*, 86 Ohio App.3d 327, 332, 620 N.E.2d

973 (4th Dist.1993) (stating that "the primary, if not only, consideration in the

disposition of all children's cases is the best interests and welfare of the child").

LEGAL-CUSTODY STANDARD

{¶22} After a trial court adjudicates a child abused, neglected, or dependent,

R.C. 2151.353(A)(3) authorizes the court to "[a]ward legal custody of the child to

either parent or to any other person who, prior to the dispositional hearing, files a

motion requesting legal custody of the child or is identified as a proposed legal

custodian in a complaint or motion filed prior to the dispositional hearing by any

party to the proceedings."

> "Legal custody" means a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

R.C. 2151.011(B)(21).

{¶23} Although legal custody is intended to be permanent in nature, R.C.

2151.42(B), it "is not as drastic a remedy as permanent custody because a parent

retains residual rights and has the opportunity to request the return of the children."

*In re Memic,* 11th Dist. Lake Nos. 2006-L-049, 2006-L-050, and 2006-L-051,

2006-Ohio-6346, ¶ 24 (citations omitted); *In re Nice,* 141 Ohio App.3d 445, 455,

751 N.E.2d 552 (7th Dist.2001).

{¶24} In order to award legal custody of an abused, neglected, or dependent

child to a parent or other person, a trial court must find, by a preponderance of the

evidence, that legal custody to the parent or other person is in the child's best

interest. *In re K.L.V.W.*, 8th Dist. Cuyahoga No. 112067, 2023-Ohio-1287, ¶ 28

and 30; *In re E.N.*, 4th Dist. Highland No. 21CA5, 2022-Ohio-116, ¶ 23. "A

'preponderance of the evidence' is 'evidence which is of greater weight or more

convincing than the evidence which is offered in opposition to it.' " *In re B.P.*, 191 Ohio App.3d 518, 2010-Ohio-6458, 946 N.E.2d 818, ¶ 43 (4th Dist.), quoting Black's Law Dictionary 1182 (6th Ed.1998).

{¶25} Although the child's best interest is the controlling principle in determining whether to award a parent or other person legal custody, R.C. 2151.353(A)(3) does not list any certain factors that guide the best interest determination.  Moreover, Ohio appellate courts have not settled on any particular best interest test that a trial court must apply when considering an R.C. 2151.353(A)(3) legal custody award.  Instead, courts have looked to the best interest factors listed in R.C. 3109.04 or R.C. 2151.414, a combination of the two, or a general best interest test.  *In re L.W.*, 3rd Dist. Wyandot No. 16-22-03, 2022-Ohio-3696, ¶ 62 ("juvenile courts may be guided by the factors listed in R.C. 2151.414(D)(1) (the permanent-custody factors) or R.C. 3109.04(F)(1) (factors employed in private-custody disputes)"); *In re Z.M.*, 10th Dist. Franklin No. 20AP-295, 2021-Ohio-3744, ¶ 31 ("courts have found the factors stated in R.C. 3109.04(F) to be instructive in determining the best interests of the child in an R.C. 2151.353(A)(3) legal custody case"); *In re V.P.*, 8th Dist. Cuyahoga No. 109649, 2020-Ohio-5626, ¶ 32 ("the factors in R.C. 2151.414(D) are not mandatory but instructive when making a best-interest-of-the-child determination in legal custody matters"); *In re F.B.D.*, 1st Dist. Hamilton No. C-180356, 2019-Ohio-2562, ¶ 12

(stating that courts may look to R.C. 3109.04(F) or R.C. 2151.414(D)); *In re E.H.*, 6th Dist. Ottawa No. OT-15-044, 2016-Ohio-8170, ¶ 17 (considering both R.C. 2151.414(D)(1) and 3109.04(F)(1)); *In re A.K.*, 2nd Dist. Montgomery No. 27575, 2017-Ohio-8100, ¶ 13 ("[i]n the context of a legal-custody motion, the pertinent best-interest factors are found in R.C. 3109.04(F)(1)"); *In re S.D.*, 5th Dist. Stark No. 2013CA0081, 2013-Ohio-5752, ¶ 33-34 (looking to R.C. 2151.414(D)(1) for guidance); *In re A.K.*, 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 25 ("courts have looked to the best interest factors of R.C. 2151.414(D), R.C. 3109.04(F)(1), a combination of the two, or general notions of what should be considered regarding the best interests of the children"); *In re M.A.*, 12th Dist. Butler No. CA2011-02-030, 2012-Ohio-545, ¶ 16 ("[a]lthough there is no statutory mandate that the factors in R.C. 3109.04(F) be expressly considered and balanced before fashioning an award of custody under R.C. 2151.353(A)(3), a juvenile court is certainly entitled to consider those factors, as well as any other relevant factors, in making its custody determination"); *see also* Best Interests of the Child, Black's Law Dictionary (11th ed. 2019) (explaining that the best-interest-of-the-child standard is one "by which a court determines what arrangements would be to a child's greatest benefit, often used in deciding child-custody and visitation matters and in deciding whether to approve an adoption or a guardianship" and listing some of the best interest factors courts commonly consider as "the emotional tie between the

child and the parent or guardian, the ability of a parent or guardian to give the child

love and guidance, the ability of a parent or guardian to provide necessaries, the

established living arrangement between a parent or guardian and the child, the

child's preference if the child is old enough that the court will consider that

preference in making a custody award, and a parent's ability to foster a healthy

relationship between the child and the other parent").

{¶26} This court traditionally has considered the best interest factors listed

in R.C. 3109.04 when reviewing a trial court's legal custody decision in an abuse,

neglect, or dependency case. *E.g., E.N.* at ¶ 25; *In re A.L.P.*, 4th Dist. Washington

No. 14CA37, 2015-Ohio-1552, ¶ 17; *Pryor*, 86 Ohio App.3d at 336 ("in our

opinion, the juvenile courts should consider the totality of the circumstances,

including, to the extent they are applicable, those factors set forth in R.C.

3109.04(F)").  In the case before us, however, the trial court's judgment entry

states that it considered the factors in R.C. 3019.051.  Appellant, however, has not

suggested that the trial court erred by applying R.C. 3109.051.  Instead, Appellant

asserts that we should consider the R.C. 3109.04(F)(1) best-interest factors when

reviewing the trial court's legal-custody decision.

{¶27} R.C. 3109.04(F)(1) lists the following best interest factors:

> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to

division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the

offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶28} As with other best interest tests, no one factor is controlling. "Instead, the trial court considers the totality of the circumstances when making its best interest determination." *In re K.M.*, 4th Dist. Pickaway No. 16CA17, 2017-Ohio-1336, ¶ 51 (citations omitted).

{¶29} In the case at bar, Appellant zeroes in on one best interest factor: "The [party] more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights[.]" R.C. 3109.04(F)(1)(f). She contends that the maternal grandparents are not more likely to honor and facilitate her visitation rights with J.C. given their admitted failures to allow her to visit her other children in their legal custody. Appellant's argument that we should consider this one factor in isolation is contrary to the totality-of-the-circumstances approach that courts apply when evaluating a child's best interest. We therefore disagree

with Appellant that this one factor illustrates that the trial court abused its discretion by awarding Appellees legal custody of J.C.

{¶30} Additionally, Appellant's argument rests upon a credibility assessment of the maternal grandmother's testimony that she would comply with court-ordered visitations and facilitate visits with J.C. The trial court was in the best position to assess the maternal grandmother's credibility, and we have no basis to conclude that the trial court incorrectly credited her testimony.

{¶31} Appellant also asserts that awarding Appellees legal custody of J.C. is not in his best interest because she "made significant" case plan progress and because the agency agreed that she and the father should have more time to complete all of the case-plan goals. However, even if appellant has significantly complied with the case plan, as we have observed in the past, a parent's case plan compliance may be a relevant, but not necessarily conclusive, factor when a court evaluates a child's best interest. *In re Ca.S.*, 4th Dist. Pickaway No. 21CA10, 2021-Ohio-3874, ¶ 39-40; *In re B.P.*, 4th Dist. Athens No. 20CA13, 2021-Ohio-3148, ¶ 57; *In re T.J.*, 4th Dist. Highland No. 2016-Ohio-163, ¶ 36, citing *In re R.L.*, 9th Dist. Summit Nos. 27214 and 27233, 2014-Ohio-3117, ¶ 34 ("although case plan compliance may be relevant to a trial court's best interest determination, it is not dispositive of it"); *In re S.C.*, 8th Dist. Cuyahoga No. 102349, 2015-Ohio-2280, ¶ 40 ("[c]ompliance with a case plan is not, in and of itself, dispositive of the

issue of reunification"); *accord In re C.W.*, 2nd Dist. Montgomery No. 28781, 2020-Ohio-6849, ¶ 19 ("[c]ase-plan compliance is not the only consideration in a legal custody determination"); *In re K.M.*, 4th Dist. Ross No. 19CA3677, 2019-Ohio-4252, ¶ 70, citing *In re W.C.J.*, 4th Dist. Jackson No. 14CA3, 2014-Ohio-5841, ¶ 46 ("[s]ubstantial compliance with a case plan is not necessarily dispositive on the issue of reunification").

> Indeed, because the trial court's primary focus in a [legal] custody proceeding is the child's best interest, a parent's case plan compliance is not dispositive and does not prevent a trial court from awarding legal custody to a nonparent. Thus, a parent's case plan compliance will not preclude a trial court from awarding legal custody to a nonparent when doing so is in the child's best interest.

*Id.*; *accord In re P.V.A.*, 11th Dist. Ashtabula No. 2022-A-0097, 2023-Ohio-1622, ¶ 19; *In re J.M.*, 2nd Dist. Montgomery No. 28508, 2020-Ohio-822, ¶ 15.

{¶32} Accordingly, even if appellant has substantially complied with the case plan, her compliance does not mean that the trial court had an obligation to grant the agency's request for a six-month extension. Rather, the trial court's obligation was to make a decision that would be in J.C.'s best interests.

{¶33} We further note that Appellant has not raised any other specific arguments regarding the trial court's best interest determination. Thus, we need not independently analyze the trial court's best interest determination. *E.g., B.P.* at ¶ 56 ("when a parent does not present any analysis of the best interest factors, we

ordinarily will not create that analysis for the parent"); *State v. Munoz*, 8th Dist. Cuyahoga No. 112006, 2023-Ohio-1895, ¶ 21, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19 ("[a]ppellate courts are not obligated to create, nor should they sua sponte provide, arguments on behalf of parties").  We simply note that the record does not establish that the trial court abused its discretion by determining that placing J.C. in Appellees' legal custody is in his best interest.  Additionally, we observe that the guardian ad litem recommended that the court place J.C. in Appellees' legal custody.  *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 56 (observing that "[t]he trial court has discretion to accept the testimony of the guardian ad litem on the child's wishes").  The guardian ad litem also stated that he did not believe that a six-month extension would alter his custody recommendation.

{¶34} Because the trial court found that placing J.C. in Appellees' legal custody is in his best interest, it necessarily determined that granting the agency's request for a six-month extension is not in his best interest.  *See In re J.M.*, 9th Dist. Summit No. 30258, 2022-Ohio-3638, ¶ 32 (stating that when a trial court trial court finds that legal-custody award to nonparent is in the child's best interest, the court necessarily must deny any extension of temporary custody); R.C. 2151.415(D)(1) (stating that court may extend temporary-custody order if it determines, "by clear and convincing evidence, that the extension is in the best

interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension").

{¶35} For all of the foregoing reasons, we do not agree with Appellant that the trial court erred by placing J.C. in Appellees' legal custody.  Therefore, we overrule Appellant's sole assignment of error and affirm the trial court's judgment.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J., & Wilkin, J.: Concur in Judgment and Opinion.


For the Court,


_____
Jason P. Smith
Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**